**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Joseph J. FORSZT, Defendant-Appellant.**

No. 80–2392.

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1981.

Decided July 27, 1981.

Rehearing and Rehearing En Banc Denied Aug. 27, 1981.

Martin H. Kinney, Merillville, Ind., for defendant-appellant.

Paul A. Murphy, Asst. U. S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, SWYGERT, Senior Judge, and JAMESON, Senior District Judge.*

CUMMINGS, Chief Judge.

Defendant Joseph J. Forszt was a member of the Board of Commissioners of Lake County, Indiana, from January 1949 to December 31, 1974. In March 1980, he was indicted on one count for violating 18 U.S.C. § 1962(c),[1] a provision of the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. §§ 1961–1968). The indictment charged defendant with engaging in a "pattern of racketeering activity" as defined in RICO Section 1961[2] in that he solicited and received periodic payments of money to influence him in the discharge of his official duties in violation of the Indiana bribery statute (Ind.Stat. § 10–602 (Burns))[3] and 18 U.S.C. § 1951 (Hobbs Act covering interference with commerce through extortion).[4]

According to the indictment, defendant in January 1949 solicited 8% of the gross receipts that the Gary Office Equipment Company received from Lake County contracts and from January 1949 to March 30, 1975, received 5% of those gross receipts. The indictment further alleged that defendant received a $6000 payment from Dyer

---

* The Honorable William J. Jameson, Senior District Judge of the District of Montana, is sitting by designation.

1. Section 1962(c) provides:

    "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

2. Section 1961 provides in pertinent part:

    "As used in this chapter—

    (1) 'Racketeering activity' means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of

title 18, United States Code: * * * section 1951 (Hobbs Act relating to * * * extortion) * * *."

3. Section 10–602 provides in pertinent part that "whoever, either before or after he is summoned, elected, appointed, qualified or sworn as a * * * county commissioner * * * solicits or accepts any money or other valuable thing to influence him with respect to the discharge of his duties as such, shall, on conviction, be imprisoned in the state prison not less than two (2) years nor more than fourteen (14) years * * *."

4. Hobbs Act extortion as defined in 18 U.S.C. § 1951(b)(2)

    "* * * means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."

Construction Company in 1960, a $5000 payment from Harry Preste in 1970, and $7500 and $6000 payments from Gary Office Equipment Company in December 1974 and March 1975 respectively.

Defendant was convicted by a jury and sentenced to five years imprisonment and a fine of $25,000. He appeals, urging three grounds for reversal. We affirm.

## I

■ Defendant's first argument is that the Government failed to prove that the payments he received from Gary Office Equipment Company were intended to influence him in the discharge of his official duties, so that the district court erred in denying his post-verdict motion for judgment of acquittal. As defendant correctly states, "in Indiana it is the soliciting or the receiving of money by an official to influence him with respect to his official duties that is the gravamen of the offense of bribery" (Br. 2–3). *Williams v. State*, 188 Ind. 283, 123 N.E. 209 (1919); *Glover v. State*, 109 Ind. 391, 10 N.E. 282 (1887). According to defendant, the evidence at trial shows that the payments he received from Gary Office Equipment Company were political contributions, not bribes, and therefore the "six acts charged under the Indiana Bribery Act should be dismissed" (Br. 6). However, we have reviewed the evidence in the light most favorable to the Government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, and conclude that it amply supports the jury's finding of Indiana bribery.

· ■ While Robert Dering, the founder of Gary Office Equipment Company, called the payments "political contributions," he testified that the money had always been paid in cash and delivered in unmarked envelopes hidden in newspapers and catalogs, that he did not support defendant in any election, and that the payments were made in all years, not just election years. Dering's partners and sons Richard and Thomas testified that the money was intended to pay for business received from the county and to insure continued business.

Thomas Dering and Warren Croll, another partner, described the payments as "payoffs." Richard Dering and Croll testified that after a visit by the Federal Bureau of Investigation in 1975, they burned the records of all the transactions from 1949 to 1975. There was also testimony that the transactions were disguised in the Company's accounting records to avoid detection. Perhaps the most striking evidence of defendant's guilt was the testimony of Robert Dering and Warren Croll concerning a December 1974 conversation in which defendant complained about receiving only $7500, approximately 2% of a $385,000 metal case work contract with the county, instead of the usual 5%, which would have amounted to $19,250. In sum, the jury was entitled to infer from the evidence that the payments were made with the intent to influence defendant in the discharge of his duties and that defendant knew it, thus constituting bribes under Indiana law.

## II

Defendant's second asserted ground for reversal is that the five-year statute of limitations provided in 18 U.S.C. § 3282 ran before the indictment was filed. The indictment was filed on March 25, 1980, and charged, *inter alia*, that on or about March 26, 1975, defendant received $6000 from Gary Office Equipment Company in violation of the Indiana bribery statute (note 3, *supra*) and the Hobbs Act (note 4, *supra*). The evidence proved that said payment occurred in early April 1975. Thus the indictment on its face and the act as proved are within the five-year statute of limitations period. Defendant argues, however, that since his term of office as a county commissioner ended on December 31, 1974, there could be no act of Indiana bribery or Hobbs Act extortion when he received the $6000 payment in April 1975, so that there was no violation of RICO Section 1962(c) (note 1, *supra*) within the five years preceding the filing of the indictment. We disagree.

■ The evidence showed that the $6000 April 1975 payment was made in connection with Lake County business acquired by

Gary Office Equipment prior to December 31, 1974, when defendant left office, so that it was simply the final installment in a continuous course of criminal conduct that originated in January 1949, when defendant was first elected as a county commissioner. In *Glover v. State, supra*, 10 N.E. at 288, the Indiana Supreme Court held that it was immaterial that bribe money was paid to the defendant public official before he performed the bargained-for acts so long as it was received in pursuance of the unlawful arrangement. We interpret *Glover* as holding that Indiana bribery is a continuing offense so that payments made as part of an arrangement to influence a public official in the discharge of his duties are violations of Indiana law regardless of whether the money is paid before or after the bargained-for acts are performed.

■ Hobbs Act extortion is also a continuing offense so that no statute of limitations problem exists where, as here, there is a single continuous plan of extortion embracing multiple payments over a period of years. *United States v. Hedman*, 630 F.2d 1184 (7th Cir. 1980); *United States v. Provenzano*, 334 F.2d 678 (3d Cir. 1964), certiorari denied, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544. Moreover, in *United States v. Meyers*, 529 F.2d 1033 (7th Cir. 1976), certiorari denied, 429 U.S. 894, 97 S.Ct. 253, 50 L.Ed.2d 176, we held that it was a violation of the Hobbs Act for a public official to sell his public trust before being installed in office. By the same token, we now hold that it is unlawful for a public official to sell his public trust while in office even though the last installment for the services rendered is to come after he leaves office.

### III

■ Lastly defendant asserts that his extortion Instruction No. 21 was erroneously refused. It read as follows:

"Before you may consider the state of mind of the Government witnesses in regard to whether or not they believed the payments to the defendant were made under wrongful threat of economic loss and under color of official right, you must first determine whether or not the defendant knew the payments he was receiving were actually coming from those witnesses."

Defendant admits that there are no cases to support this proposal. Nevertheless, his counsel indicates that the instruction should have been given because Richard and Thomas Dering, two of the partners in Gary Office Equipment, never discussed the payments with defendant and because there was no evidence that defendant knew any of the money was coming from either of them. However, the evidence showed that the Company was a partnership and that defendant's 5% payoffs were based on the firm's business with Lake County. Thus the bid form from the partnership submitted to defendant on the $385,000 metal case work contract was signed by three of the partners, Richard Dering, Thomas Dering and Warren Croll (Tr. 134–135), and it is undisputed that defendant knew that Robert Dering was a partner. Since the evidence showed that defendant knew the payments he was receiving were coming from the partnership, including Richard and Thomas Dering and Warren Croll, the jury was free even under defendant's theory to consider their state of mind. They, as noted earlier, testified that they thought the partnership would lose Lake County business if they stopped making payments and that the sums were payoffs. Therefore, there was no "development of the evidence in this case" as claimed by defendant (Br. 12) to support the proposed instruction.

Instead of giving defendant's proposed Instruction No. 21, Judge Sharp gave other instructions which were decidedly favorable to the defendant. For example, he instructed the jury there would be no bribery under Indiana law unless the jury found beyond a reasonable doubt that the defendant had the requisite intent. He also set out the elements of extortion by fear of economic harm and extortion under color of official right pertinent to the Hobbs Act feature of the indictment, including the statutory definition of "extortion" (note 4 *supra*) and properly defining "fear" (used

in the federal definition of "extortion") as including putting the victim in "fear of economic loss." *United States v. Brecht,* 540 F.2d 45, 52 (2d Cir. 1976). The other relevant instructions were fully supported by the cases.[5]

Defendant's Hobbs Act theory of defense was satisfied by an instruction that if the payments were voluntary political contributions, defendant would not be guilty and that the voluntary payment of money unaccompanied by fear of economic loss does not constitute extortion. They were also told that the defendant could not be found guilty unless the payments to him were under some form of compulsion. Since the trial court fairly instructed the jury on the pertinent law, and since proposed Instruction No. 21 was not supported by the evidence or any case law, the refusal to give it was not erroneous.

Judgment affirmed.

---

**5.** *E. g., United States v. Crowley,* 504 F.2d 992 (7th Cir. 1974); *United States v. Braasch,* 505 F.2d 139 (7th Cir. 1974), certiorari denied, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775; *United States v. Staszcuk,* 502 F.2d 875 (7th Cir. 1974).

