**UNITED STATES of America,**

v.

**Buovodantona ALIPERTI, Anthony Losquadro, and Donald Zimmer, Defendants.**

**No. 94–CR–259 (DRH).**

United States District Court,
E.D. New York.

Nov. 4, 1994.

Reynolds, Caronia & Gianelli, Hauppauge, by Paul Gianelli, for Aliperti.

Brafman Gilbert & Ross, P.C., New York City by Benjamin Brafman, for Losquadro.

Perini & Hoerger, Hauppauge, by Raymond G. Perini, for Zimmer.

Zachary W. Carter, U.S. Atty., E.D.N.Y., Brooklyn, by Loretta Lynch, Edgardo Ramos, Asst. U.S. Attys., for U.S.

HURLEY, District Judge.

In the above-referenced prosecution, each Defendant is charged with conspiracy to obstruct, delay, and affect commerce by extortion, as well as the substantive crime of extortion, pursuant to the Hobbs Act, 18 U.S.C. § 1951. Defendant Aliperti is also charged with perjury. 18 U.S.C. § 1623(a). Currently before the Court are the following motions for pre-trial relief: (1) motions to dismiss Counts One through Five of the Indictment as "facially insufficient" in that they fail to allege a *quid pro quo,* or, in the alternative, for a bill of particulars; and (2) motion by Defendant Zimmer to dismiss Count Five on the ground that it is duplicitous and charges him with crimes that allegedly occurred "outside the statute of limitations" period.[1] For the reasons set forth below, the motions are granted in part and denied in part.

*Discussion*

I. *Motions to Dismiss*

A. *Sufficiency of Counts One through Five: Failure to Allege a Quid Pro Quo*

The Court first considers Defendants' motions to dismiss Counts One through Five of

---

1. The Court has not addressed Defendant Aliperti's motion to dismiss Count Seven due to "fundamentally ambiguous questioning at the grand jury proceedings," for the parties have not provided the Court with a transcript of the relevant testimony. The parties are to submit the transcript to the Court on or before November 9, 1994, and the motion will be decided promptly thereafter.

the Indictment on the ground that these counts are facially insufficient. Defendants contend that these counts fail to meet the requirements of Federal Rule of Criminal Procedure 7(c)(1), for they fail to allege that the Defendants received property *"in return for* ... agreement[s] to perform specific official acts." (Losquadro Mem. at 7 (emphasis in original).) In other words, Defendants contend that the Government has failed to allege a *quid pro quo.*

Rule 7 provides, in pertinent part, that "[t]he indictment ... shall be a plain, concise and definite written statement of the essential facts constituting the offense charged.... It need not contain ... any other matter not necessary to such statement." Fed.R.Crim.P. 7(c)(1). Courts have consistently explained that an indictment meets the requirements of Rule 7 when it contains "(a) the elements of an offense, (b) notice to the defendant of the charges he must be prepared to meet, and (c) information sufficient to protect the defendant against double jeopardy." *United States v. Albunio,* No. CR–91–0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) (citing *United States v. Bailey,* 444 U.S. 394, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980)); *see also United States v. Hernandez,* 980 F.2d 868, 871 (2d Cir.1992) (citing *United States v. Carrier,* 672 F.2d 300, 303 (2d Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982)).

■■ Generally, an indictment that tracks the statutory language defining the offense satisfies these three requirements, and, as such, is sufficiently specific to withstand a motion to dismiss. *See United States*

*v. Citron,* 783 F.2d 307, 314 (2d Cir.1986) (citations omitted); *United States v. Upton,* 856 F.Supp. 727, 739 (E.D.N.Y.1994) (citing *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974)). Such an indictment need only be supplemented when the statute itself contains "generic terms." *See Hamling,* 418 U.S. at 118, 94 S.Ct. at 2908; *see also Russell v. United States,* 369 U.S. 749, 765, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240 (1962).

■■ Defendants do not dispute that the Indictment in this case tracks the statutory language of 18 U.S.C. § 1951.[2] Defendants contend, however, that the statutory language, as incorporated in the Indictment, "fails to allege every essential element of the offenses charged." (Losquadro Mem. at 8.) More specifically, Defendants argue that, according to the Supreme Court's decision in *Evans v. United States,* —— U.S. ——, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992), a *quid pro quo* is an additional element of the crime of extortion that is not explicitly set forth in the statute. This Court disagrees.

In *Evans,* the Supreme Court was confronted with the issue of what the Government must prove at trial in order to obtain a conviction under 18 U.S.C. § 1951.[3] In its opinion, the Court provided a detailed explanation of the history and meaning of the terms "extortion under color of official right." The Court began by noting that, as a matter of statutory interpretation, "[i]t is a familiar 'maxim that a statutory term is generally presumed to have its common-law meaning.'" 112 S.Ct. at 1885 (quoting *Taylor v. United States,* 495 U.S. 575, 592, 110 S.Ct.

**2.** This Section provides, in relevant part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

(2) The term 'extortion' means the obtaining of property from another, with his consent, ... under color of official right.

18 U.S.C. § 1951.

**3.** In its opinion, the Court nowhere addressed the requirements of an indictment under Section 1951; instead, the Court's opinion focused upon what the Government was required to demonstrate at trial.

2143, 2154, 109 L.Ed.2d 607 (1990)). Further, the Court explained that

> where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed. In such case, absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them.

*Id.* (quoting *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952)).

Applying this rule of statutory construction to Section 1951, the Court began by setting forth the common-law definition of extortion: "an offense committed by a public official who took 'by colour of his office' money that was not due to him for the performance of his official duties." *Id.* The Court indicated that this definition encompasses the concept of a *quid pro quo*:

> As we explained above, our construction of the statute
>
> > is informed by the common-law tradition from which the term of art was drawn and understood. We hold today that the Government need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts.

*Id.* at 1889. Indeed, in response to the dissent's contention that the majority had "'simply made up' the requirement that the payment must be given in return for official acts," the Court stated that, "[o]n the contrary," the *quid pro quo* requirement "is derived from the statutory language 'under color of official right,' which has a well-recognized common-law heritage...." *Id.* at 1889 n. 20. Further, in another portion of the opinion, the Court emphasized that the definition does not pertain to *every* taking by a public official of "something of value that he was not 'due'"; instead, under the common-law definition, "the payment must be 'for the performance of his official duties.'" *Id.* at 1885 n. 5.

Based upon this language, this Court finds that the requirement of a *quid pro quo*, rather than amounting to an additional element unspecified in the statute, is encompassed within the language of the statute itself.[4] The term "under color of official right," as used in the statute, is not generic in nature, but, instead, is a "legal term of art." *See Hamling v. United States*, 418 U.S. 87, 118, 94 S.Ct. 2887, 2908, 41 L.Ed.2d 590 (1974) (citations omitted). The legal definition of "under color of official right" thus "does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." *See id.* (citations omitted); *see also Carrier*, 672 F.2d at 303. As the definition of a legal term "need not be alleged in the indictment in order to establish its sufficiency," *see Hamling*, 418 U.S. at 119, 94 S.Ct. at 2908, the Court rejects Defendants' contention that the Government was required to separately allege a *quid pro quo*.[5] Defen-

---

4. The Court recognizes that, in his concurring opinion, Justice Kennedy refers to the *quid pro quo* requirement as an "element" of the offense of extortion. Justice Kennedy explains, however, that "this essential element of the offense is derived from the statutory requirement that the official receive payment under color of official right....", and his concurrence further notes that the *quid pro quo* requirement has "firm roots in the statutory language." *Evans*, 112 S.Ct. at 1893 (Kennedy, J., concurring). Moreover, the concurring opinion focused upon what the Government must prove at trial, and in no way intimates whether a *quid pro quo* must be identified in the indictment. Thus, despite Justice Kennedy's use of the word "element," the Court believes that the most appropriate interpretation of the *quid pro quo* requirement is that

it is encompassed by the statutory language, and need not be separately alleged in an indictment.

5. Indeed, as the Government correctly notes, the gravamen of Defendants' motion to dismiss is not that an essential element was omitted from the Indictment, but, instead, "that the government has not spelled out the exact terms of [Defendants'] agreement with McNamara...." (Gov't Mem. at 8.) However, an indictment is not defective "simply because it might have been made more certain." 1 Charles A. Wright *et. al, Federal Practice and Procedure* § 125, at 388 (1982). "The pleading provisions of the criminal rules cannot be viewed in isolation, but must be considered part of a coordinated system for the administration of criminal justice. Accordingly

dants' motion to dismiss the Indictment is, therefore, denied.

### B. *Count Five: Duplicity and Statute of Limitations*

Defendant Zimmer also contends that Count Five of the Indictment should be dismissed on the grounds that it is duplicitous and that its allegations fall outside of the statute of limitations period. Each of these grounds is addressed separately below.

#### 1. *Duplicity*

The Court first considers Defendant Zimmer's contention that Count Five is duplicitous in that it "charges numerous separate and distinct crimes in a single count." (Zimmer Mem. at 12.)

"A claim of duplicity is that two or more distinct offenses are charged in a single count." *United States v. Albunio*, No. CR–91–0403, 1992 WL 281037, at *4 (E.D.N.Y. Sept. 9, 1992). A single count that alleges more than one offense, however, is not necessarily subject to dismissal. Indeed, "under the law of this Circuit, 'acts that could be charged as separate counts of an indictment may instead be charged in a single count if those acts could be characterized as part of a single continuing scheme.'" *United States v. Aracri*, 968 F.2d 1512, 1518 (2d Cir.1992) (quoting *United States v. Tutino*, 883 F.2d 1125, 1141 (2d Cir.1989), *cert. denied*, 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)) (further citation omitted).

The Government contends that Defendant Zimmer engaged in an "extortionate scheme that lasted from 1985 to December 1991," and that "[t]he various payments and benefits ... were all alleged to have been made in connection with the scheme...." (Gov't Mem. at 41.) Having read Count Five in the context of the Indictment as a whole, which alleges that Defendants engaged in a single, continuous scheme of extortion,[6] Defendant Zimmer's motion to dismiss Count Five on the ground of duplicity is denied.[7] *See Albunio*, 1992 WL 281037, at *1, 4 (holding that a single count charging "multiple acts of extortion at various (unspecified) locations at various (unspecified) times over a three year period from various (unspecified) 'victims'" was not duplicitous in that it charged a single, continuous scheme of extortion).

#### 2. *Statute of Limitations*

Defendant Zimmer also contends that the allegations in Count Five "primarily fall outside the statute of limitations." (Zimmer Mem. at 12–13.) Prosecutions under 18 U.S.C. § 1951 are subject to a five-year statute of limitations. 18 U.S.C. § 3282. Based upon this limitations period, Defendant Zimmer contends that he may be prosecuted only for those extortionate acts that allegedly occurred after March 22, 1989. (*Id.* at 13.)

Although the Government agrees that Zimmer is charged with extortionate conduct that allegedly began in 1985, the Government contends that "Hobbs Act extortion is a con-

---

if the indictment is otherwise sufficient, the court can take into account that particular facts needed in particular cases are obtainable by bill of particulars or discovery." *Id.; see also United States v. Carrier*, 672 F.2d 300, 303 (2d Cir.1982) ("A bill of particulars may not save an invalid indictment; it may provide the defendant with the evidentiary details needed to establish his defense.") (footnote omitted); *United States v. Albunio*, No. CR–91–0403, 1992 WL 281037, at *2 (E.D.N.Y. Sept. 9, 1992) ("The defendant's right to know the crime with which he is charged must be distinguished from his right to know the evidentiary details by which proof of his culpability will be established.") (citations omitted).

**6.** Although Defendant Zimmer contends that the alleged extortionate acts lack a "nexus" that would connect them into a single scheme, the Court declines to examine the Government's

proof prior to trial, and accepts the allegations of the Indictment as true. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 & n. 16, 72 S.Ct. 329, 332 & n. 16, 96 L.Ed. 367 (1952).

Similarly, as to Zimmer's contention that those allegations regarding the antiques transactions must be dismissed on the ground that, "based on the government's own evidence," the transactions "have no victim engaged in interstate commerce," the Court declines to examine the Government's proof at this stage in the proceedings. *See id.*

**7.** The Court notes that, should Defendant Zimmer prefer to have the jury identify the alleged extortions, if any, that it finds to have occurred, the Defendant may move for the submission to the jury of a special interrogatory. *See United States v. Margiotta*, 646 F.2d 729, 733–34 (2d Cir.1981).

tinuing offense, so that no statute of limitations problem exists where, as here, there is a single continuous plan of extortion embracing multiple payments over a period of years." (Gov't. Mem. at 41.)

The Second Circuit has not directly spoken to the issue of whether extortion under 18 U.S.C. § 1951 may be characterized as a "continuing offense." Indeed, it appears that only three circuits, the First, Third, and Seventh, have addressed this issue. *See United States v. Bucci*, 839 F.2d 825, 829–30 (1st Cir.), *cert. denied*, 488 U.S. 844, 109 S.Ct. 117, 102 L.Ed.2d 91 (1988); *United States v. Forszt*, 655 F.2d 101, 103–04 (7th Cir.1981); *United States v. Hedman*, 630 F.2d 1184, 1199 (7th Cir.1980), *cert. denied*, 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981); *United States v. Provenzano*, 334 F.2d 678, 684–85 (3d Cir.), *cert. denied*, 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964). Each of these circuits has determined that a single scheme of extortion spanning multiple years may be considered a continuing offense for statute of limitations purposes.

This Court is mindful that "the doctrine of continuing offenses should be applied in only limited circumstances...." *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Although the considerations underlying this strict construction "do not mean that a particular offense should never be construed as a continuing one," such considerations

> do, however, require that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one.

*Id.* Bearing this standard in mind, and based upon the uniform determinations of those Courts of Appeals that have addressed this issue, this Court finds that in prosecutions under Section 1951, such as the one at bar, where the Indictment alleges that the defendants engaged in a single, continuous plan of extortion envisioning multiple payments over several years from certain named companies, Congress would have intended that the offense be treated as a continuing one. As such, the Government may seek to prove the entire extortionate scheme, "including acts done outside the period of limitations, provided of course that the offense continued ... into that period." *United States v. Lena*, 497 F.Supp. 1352, 1359 (W.D.Pa.1980), *aff'd*, 649 F.2d 861 (3d Cir. 1981); *cf. United States v. Castellano*, 610 F.Supp. 1359, 1381 (S.D.N.Y.1985).

■ Defendant Zimmer acknowledges that one of the alleged extortionate acts with which he is charged—his employment with the McNamara entities—falls within the statute of limitations period. (Zimmer Mem. at 21.) Zimmer suggests, however, that this employment cannot serve as the basis for conviction under Section 1951, for, he contends, he received this benefit following his tenure as a member of the Town Board, and, as such, the employment could not have been obtained "under color of official right." (*Id.* at 25–26.)

This position is meritless. As one court has succinctly explained, "one who, as a public official, has been receiving extortionate payments continues to commit an offense if he receives as part of the same series of payments, additional payments, after he leaves office." *Lena*, 497 F.Supp. at 1359; *see also Forszt*, 655 F.2d at 104 ("[W]e now hold that it is unlawful for a public official to sell his public trust while in office even though the last installment for the services rendered is to come after he leaves office."). Thus, Defendant Zimmer's alleged receipt of the benefit of employment may properly form the basis of a charge under Section 1951, even though it was allegedly received following his departure from the Town Board.[8] Defendant Zimmer's motion to dismiss Count Five is, therefore, denied.

---

8. Again, to the extent that Defendant Zimmer contends that the Government's "evidence" fails to establish that the offer of employment was a result of extortion (*see* Zimmer Mem. at 25), the Court declines to undertake an examination into the adequacy of the Government's proof prior to trial. *See Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 343 & n. 16, 72 S.Ct. 329, 332 & n. 16, 96 L.Ed. 367 (1952); *see also Costello v. United States*, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956) (indictment that is

## II. *Bill of Particulars*

Defendants [9] also demand a bill of particulars [10] pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure.[11] (Losquadro Mem. at 18 n. 3.)

■■ The purpose of a bill of particulars is " 'to provide defendant with information about the details of the charge against him if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial,' " *United States v. Torres,* 901 F.2d 205, 234 (2d Cir.) (citation omitted), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990), as well as to enable a defendant to interpose a plea of double jeopardy if subsequently prosecuted for the same offense. *United States v. Bortnovsky,* 820 F.2d 572, 574 (2d Cir.1987) (citations omitted). The Second Circuit has explained that "[g]enerally, if the information sought by defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky,* 820 F.2d at 574 (citations omitted). Thus, a bill of particulars "should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused," *Torres,* 901 F.2d at 234 (citations omitted); and "[i]t is not enough that the information would be useful to the defendant; if the defendant has been given adequate notice of the charges against him, the government is not required to disclose additional details about its case." *United States v. Payden,* 613 F.Supp. 800, 816 (S.D.N.Y.1985). The decision to grant or deny a bill of particulars is within the sound discretion of the trial court. *United States v. Panza,* 750 F.2d 1141, 1148 (2d Cir.1984).

### A. *Details of the Conspiracy*

■■ Defendants first request certain details with regard to the conspiracy with which they are charged. In this regard, they seek particularization regarding the following: (1) the dates that the conspiracy began and ended; (2) where, other than in the Eastern District of New York, the conspiracy allegedly occurred; and (3) the "others" with whom they allegedly conspired.

■■ As a general rule, a defendant is not entitled to detailed evidence about a conspiracy to properly prepare for trial. *United States v. Feola,* 651 F.Supp. 1068, 1132 (S.D.N.Y.1987), *aff'd,* 875 F.2d 857 (2d Cir.), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). More specifically, details regarding the date on which the conspiracy was formed, or when each participant entered into the conspiracy need not be revealed before trial. *United States v. Persico,* 621 F.Supp. 842, 868 (S.D.N.Y.1985). Furthermore, "[d]efendants are not entitled to discover through a bill of particulars the locations in addition to those listed in the indictment at which they are alleged to have violated the statute, where the information already made available to defendants is sufficient to enable proper preparation for trial and further discovery would amount to an unnecessary revelation of evidence." *Feola,* 651 F.Supp. at 1133 (citation omitted). Finally, the refusal of a district court to direct the filing of a bill of particulars as to the names of unindicted co-conspirators is not an

---

valid on its face may not be challenged on the ground that it is based on inadequate evidence).

**9.** Although the request for particulars was filed by Defendant Losquadro, and the bulk of the requests seek information regarding the charges pending against Defendant Losquadro, the parties apparently agree that Defendants Aliperti and Zimmer have also joined in the request. (*See* Gov't Sept. 15, 1994 Letter at 1.)

**10.** The Court notes that Defendants have failed to comply with the requirements of Local Criminal Rule 3(d), which provides, in relevant part, that:

No motion [for a bill of particulars] shall be heard unless counsel for the moving party files with the court simultaneously with the filing of the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issue raised by the motion without the intervention of the court and has been unable to reach such an agreement.

The failure to comply with this rule could serve as grounds for the Court to deny the motion for bill of particulars in its entirety. *See United States v. Biaggi,* 675 F.Supp. 790, 808–09 (S.D.N.Y.1987).

**11.** The rule provides, in relevant part, that "[t]he court may direct the filing of a bill of particulars." Fed.R.Crim.P. 7(f).

abuse of discretion. *United States v. Gotti,* 784 F.Supp. 1017, 1018 (E.D.N.Y.1992) (citing *United States v. Torres,* 901 F.2d 205, 233–34 (2d Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990)).

Because Defendants have received adequate information regarding the time, place, and nature of the charged conspiracy, and in keeping with the reasoning of the cases cited above, Defendants' requests with regard to any such specific details are denied.

### B. *The Substantive Extortion Charges*

Defendants also request certain particulars with regard to the substantive charges of extortion contained in Counts Two, Four, and Five. More specifically, Defendants contend that the Government should provide them with details regarding the *quid pro quo* that the Government will seek to provide at trial. (Losquadro Mem. at 18 n. 3.) Although Defendants do not elaborate upon the information that would fulfill such a request, presumably Defendants are requesting information with respect to what specific official acts the Defendants allegedly agreed to perform, when and where these agreements occurred, and which property was allegedly received in return for such agreements. In response, the Government contends that, following Defendants' request for particulars, it provided Defendants with discovery materials that adequately inform Defendants of the requested information.

Because the Government will be required to prove at trial that Defendants obtained payments to which they were not entitled, knowing that the payments were made in return for official acts, *Evans,* 112 S.Ct. at 1889, the Court finds that Defendants are entitled to some particularization in this regard, in order to adequately prepare a defense and to avoid unfair surprise at trial. Although it appears that the Government has indeed provided voluminous discovery materials to Defendants, the Court is unable to determine on the submissions currently before the Court whether these discovery materials adequately inform Defendants of the

particulars of any *quid pro quo.* Defendants are, therefore, directed to submit further briefing, on or before November 9, 1994, with regard to the specific materials that they contend the Government should provide in this regard;[12] and the Government must also provide detailed support, on or before that date, for its contention that the materials heretofore provided to the Defendants satisfy its obligations with respect to the issue of any *quid pro quo.*

### Conclusion

For the reasons set forth above, Defendants' above-referenced motions to dismiss are denied, and Defendants' motion for a bill of particulars is denied in part and granted in part.

SO ORDERED.

---

**12.** The Court notes that it is not clear whether Defendants' remaining requests for particulars pertain to the *quid pro quo* issue. In their sub-missions to the Court, Defendants should indicate whether these requests pertain to this issue, or should be granted on other grounds.