**UNITED STATES of America,
Plaintiff,**

v.

**Saverio GALASSO, III a/k/a "Sammy"; Joseph Pistone a/k/a "Joe Baldy"; Michael Delucia a/k/a "Michael Fazio"; Robert Misseri a/k/a "Robert Mangano"; and Gary Hendrickson, Defendants.**

No. 00–CR–122 (S–1).

United States District Court,
E.D. New York.

Oct. 7, 2000.

Loretta Lynch, U.S. Attorney, Eastern Dist. of N.Y., Garden City, NY by Gary R. Brown and James Mikiewicz, Asst. U.S. Attorneys, for Plaintiff.

Amsterdam & Branden, New York City by Valerie S. Amsterdam, of counsel, for Defendant Saverio Galasso III.

Gary Schoer, Syosset, NY, for Defendant Joseph Pistone.

Alan S. Futerfas and Ellen B. Resnick, New York City, for Defendant Robert Misseri.

Elizabeth E. Macedonio, New York City, for Defendant Gary Hendrickson.

Edward P. Jenks, Mineola, NY, for Defendant Gary Hendrickson.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This complex criminal case involves allegations of racketeering, conspiracy, arson, mail fraud, and money laundering against various Defendants. Presently before the Court are motions by Defendant Saverio Galasso III to (i) sever his trial from his Co-Defendants pursuant to Fed. R. Crim. P. 14; (ii) to strike portions of the indictment pursuant to Fed. R. Crim. P. 7; and (iii) for a bill of particulars; by Defendant Pistone to (i) sever his trial from his Co-Defendants; (ii) for certain pre-trial discovery; and (iii) for suppression of statements and other evidence; by Defendant Misseri to (i) suppress evidence seized from his wallet and briefcase; (ii) for certain pre-trial discovery; (iii) for a bill of particulars; (iv) for severance of his trial from his Co-Defendants; (v) for dismissal of Count Ten of the indictment, alleging a money laundering conspiracy, as being insufficient; and (vi) for dismissal of the arson conspiracy overt act alleged as racketeering act two for failure to allege the essential elements of the crime; and by Defendant Gary Hendrickson for (i) severance of his trial from his Co-Defendants; (ii) for certain pre-trial discovery; and (iii) for a bill of particulars.

### BACKGROUND

The Defendants were charged in a seven-count indictment filed in this Court on February 10, 2000. On April 10, 2000, a superseding ten-count indictment was filed by the Government. According to the superseding indictment, Defendant Galasso is the head of a "crew" affiliated with the Colombo organized crime family, and his co-Defendants are members of this crew. Collectively, the Galasso crew is alleged to have engaged in numerous acts of racketeering and fraud.

Count One of the superseding indictment alleges racketeering under 18 U.S.C. § 1961(1) and § 1961(5) against all five Defendants over a period from January 1993 until November 17, 1998. Among the overt acts alleged as part of the pattern of racketeering activity in Count One are: the August 1994 murder of Louis Dorval by Defendants Pistone and Misseri; the February 15, 1998 arson of the Hav-A-Home Kennel in Old Brookville, N.Y. by Defendants Galasso, Pistone, Misseri, and Hendrickson; repeated acts of mail fraud under 18 U.S.C. § 1341, involving the fraudulent sale of pay telephone franchises between September 1994 and December 1996 by Defendants Galasso, Delucia, Misseri, and Hendrickson; and money laundering under 18 U.S.C. § 1956 between March 1996 and November 1996 by Defendants Galasso, Delucia, Misseri, and Hendrickson. Count Two of the indictment alleges a racketeering conspiracy against the five Defendants based on these alleged overt acts.

Count Three of the indictment charges arson against Defendants Galasso, Pistone, and Hendrickson relating to the incident involving the Hav-A-Home Kennel.

Count Four of the superseding indictment charges Defendants Galasso, Delucia, Misseri, and Hendrickson with conspiracy to commit mail fraud pursuant to 18 U.S.C. § 1341 relating to the fraudulent sale of pay phone franchises. Counts Five through Nine allege individual acts of mail fraud relating to specific transactions with the victims of the pay phone scheme.

Finally, Count Ten alleges a conspiracy to launder money pursuant to 18 U.S.C. § 1956(h) by Defendants Galasso, Delucia, Misseri, and Hendrickson, in which some $109,000 in proceeds from the pay phone scheme were deposited in a bank account at EAB Bank in Uniondale, New York.

## DISCUSSION

### A. As to the various motions for severance

All four moving Defendants seek to have their trials severed from their Co-Defendants pursuant to Fed. R. Crim. P. 14. Both Defendant Galasso and Hendrickson seek severance from Defendants Pistone and Misseri on the grounds that the evidence relating to the murder of Louis Dorval would unduly prejudice the jury against them on the other counts. In addition, Defendant Galasso seeks severance from Defendants Delucia, Misseri, and Hendrickson on the grounds that he intends to assert a defense antagonistic to them on the mail fraud charges. Defendants Pistone and Misseri seek severance from Defendant Hendrickson, with Pistone arguing that Hendrickson implicated him in a plea allocution involving the arson, and with Misseri asserting that statements by Pistone and Hendrickson on the arson charge failed to mention him and thus, are exculpatory as to him. Accordingly, Pistone seeks severance based on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), while Misseri asserts an unusual "reverse-*Bruton*" argument that redaction of Hendrickson's statements will not reveal the exculpatory nature of his omission.

### (i) As to the claims of prejudice from evidence of the Dorval murder.

There is a preference in the federal system for joint trials of defendants who are indicted together, *Zafiro v. U.S.*, 506 U.S. 534, 537, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993), and the court should sever trials of co-defendants under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. *Id.* at 539, 113 S.Ct. 933; *U.S. v. Rahman*, 189 F.3d 88, 122 (2d Cir.1999).

Here, the evidence of the Dorval murder is relevant to establish the existence of the "Galasso Crew" RICO enterprise, and to establish a pattern of related

and continuous racketeering activity by that enterprise. *See e.g. U.S. v. Diaz,* 176 F.3d 52, 103 (2d Cir.1999) (no prejudice where defendant was charged with only one of the nine murders alleged against his co-defendants where evidence of all murders was necessary to prove existence and continuity of RICO enterprise); *U.S. v. DiNome,* 954 F.2d 839, 843–44 (2d Cir. 1992). While both Galasso and Hendrickson argue that they will be prejudiced by introduction of the Dorval murder, both base that claim of prejudice on the notion that the Dorval murder is not relevant to the charges against them. However, as both *Diaz* and *DiNome* demonstrate, the Dorval murder would be admissible to establish the existence and continuity of the RICO enterprise, even if the cases were severed. *See Diaz,* 176 F.3d at 104 ("Even though some of [the statements were] made prior to Roman's joining of the Latin Kings, the result is the same. Such evidence was properly admitted against Roman...").

While Galasso argues that *DiNome* stands for the proposition that defendants charged with simple fraud charges should be severed from trials of co-defendants charged with violent crimes, 954 F.2d at 844–45, that portion of the *DiNome* holding is clearly distinguishable. There, the RICO counts against the fraud defendants had been dismissed, thus eliminating the need to prove the existence and continuity of the enterprise. Moreover, unlike the defendants charged only with fraud in *Di-Nome,* both Galasso and Hendrickson are charged here with not only mail fraud and racketeering, but with conspiracy to commit arson. Accordingly, the Court finds that no undue prejudice will result from trying the charges against them jointly with Defendants Misseri and Pistone, and thus, their motions for severance are denied.

### (ii) As to Galasso's "antagonistic defense" argument

Galasso also argues that his trial should be severed from that of Misseri, Delucia, and Hendrickson on the basis that he intends to present a defense antagonistic to the interests of his Co-Defendants.

■ In order to show that he intends to offer a "mutually antagonistic defense," a defendant must make a factual demonstration that "acceptance of [his] defense would tend to preclude the acquittal of [the] other [defendant]." *U.S. v. Salameh,* 152 F.3d 88, 116 (2d Cir.1998). While the Supreme Court has recognized that the presentation of antagonistic defenses between co-defendants "may be so prejudicial in some circumstances as to mandate severance," *Zafiro,* 506 U.S. 538, 113 S.Ct. 933, the Court also observed that such defenses "are not prejudicial *per se*" and that the trial court has the discretion to tailor appropriate relief under the facts of the particular case. *Id.* at 539, 113 S.Ct. 933; *Salameh,* 152 F.3d at 116. Indeed, the Supreme Court has held that, instead of severance, "limiting instructions often will suffice to cure any risk of prejudice." *Id.* at 539, 113 S.Ct. 933.

■ Galasso has not shown that accepting his assertion that he did not engage in fraud necessarily requires the jury to find that Hendrickson, Misseri, and Delucia did. According to Galasso, he intends to show that he engaged in no wrongdoing with his own company, NCI, and that "he was uninvolved in the operation of Bell Atlantic, and that his co-defendants Delucia, Misseri and Hendrickson used and copied legitimate NCI marketing strategies in their separate 'Bell Atlantic' scheme to defraud consumers to which he was not a party." The antagonistic part of this argument-- that "Bell Atlantic" copied his legitimate NCI materials for their own fraudulent activities-- is simply makeweight. If Galasso successfully demonstrates that "he was uninvolved in the operation of Bell Atlantic," he will be acquitted of all fraud counts involving that company and will not need to assert that "Bell Atlantic" engaged in any fraudulent acts. If Galasso fails to distance himself

from "Bell Atlantic," a strategy of accusing Bell Atlantic of fraud appears to be most unwise.

Accordingly, the Court finds that Galasso's "antagonistic defense" argument does not warrant severance.

### (iii) As to the more interesting *Bruton* arguments

Defendants Pistone and Misseri seek severance under *Bruton,* but do so from polar opposite positions. Pistone argues that Hendrickson's plea allocution inculpated him, thus requiring severance of their trials under *Bruton.* Misseri argues that Hendrickson's failure to mention him as a participant in the plea allocution is the equivalent of exculpation, and that redaction of portions of Hendrickson's plea allocution involving others diminishes the exculpatory nature of the statement as to Misseri.

■ The seminal case of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), prohibits the Government from using a statement by one defendant at trial if that statement implicates another co-defendant being tried simultaneously, because the co-defendant is denied his Sixth Amendment right to confront his accuser. A *Bruton* problem may be solved by either severing the trials of the co-defendants, or, if possible, redacting the statement so that it no longer implicates the co-defendant. *Gray v. Maryland,* 523 U.S. 185, 192, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998); *Richardson v. Marsh,* 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). The redaction must be such that it does not allow the jury to infer the identity or existence of the deleted co-defendant. *Gray,* 523 U.S. at 197, 118 S.Ct. 1151.

■ Hendrickson pleaded guilty to a charge of arson involving the Hav-A-Home Kennel fire in state court on June 4, 1999. The Government contends that it will offer Hendrickson's plea allocution on that charge and other statements in a redacted form that satisfies the rule in *Richardson,* and that severance from Pistone is therefore unnecessary. The relevant portion of Hendrickson's plea allocution reads as follows:

THE DEFENDANT: Joe Pistone told me, said he had something to do, needed a ride. We meet with somebody and then we drove to which what I thought was a garage and he got out and put gas on and lit it basically.

. . .

THE COURT: Now, while -- by the way, who poured the -- brought the gasoline?

THE DEFENDANT: Joe Pistone.

THE COURT: And what were you doing while Joe Pistone--

THE DEFENDANT: Sitting in the van.

THE COURT: And were you doing anything to assist Mr. Pistone?

THE DEFENDANT: I drove him there.

THE COURT: Did you know that Mr. Pistone was going to set a building on fire when you drove him there?

THE DEFENDANT: Yes.

Curiously, the Government does not specifically state how it intends to redact the allocution, even though nearly every question and answer involves a mention of Pistone. As set forth in *Gray,* if the Government wishes to make use of the allocution in redacted form, it must do so in such a way that it does not "involve statements that . . . obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately." 523 U.S. at 196, 118 S.Ct. 1151.

Given the frequent references to Pistone throughout the allocution, the Court concludes that the only possible portion of Hendrickson's statement that would be admissible in a joint trial under *Bruton* and *Gray* would be as follows:

THE COURT: Did you know [this person] was going to set a building on fire when you drove him there?

THE DEFENDANT: Yes.

Redacting the statement in this way not only shifts the focus of the statement to Hendrickson, the confessor, but also, prevents the jury from necessarily inferring the identity of the person setting the fire. According to the Government, another individual, Peter Pistone, was also present at the time of the arson. With Hendrickson's statement redacted as described, the jury would not be able to determine whether the "him" in the statement refers to a Co-Defendant or to Peter Pistone, or some other unidentified person. Accordingly, the Court finds that, if the Government wishes to use Hendrickson's plea allocution in a joint trial of Hendrickson and Pistone, it may do so only in the redacted form set forth above, and Pistone's motion to sever his trial from Hendrickson's on the basis of *Bruton* is denied.

■ Misseri's *Bruton* argument is more creative. Pointing to several post-arrest statements given by Hendrickson and Pistone which extensively describe the events that occurred on the night of the arson, Misseri notes that he is not mentioned in any of the accounts. Citing case authority involving the "rule of completeness" in *Bruton* cases, *U.S. v. Burns*, 162 F.3d 840, 853 (5th Cir.1998), Misseri argues that admitting redacted versions of references to the Co-Defendants will prejudice him, as he claims the omission of his name from the detailed statements is exculpatory evidence in his favor.

According to the Government, it "intends to offer at trial evidence of Hendrickson's conviction for the arson ... as well as portions of Hendrickson's sworn allocution and statements to federal agents regarding the arson and Bell Atlantic scheme." The Government makes no mention of any intent to introduce two statements made by Pistone that Misseri cites to, and thus, the Court sees no reason to decide whether redaction of these statements affects their exculpatory effect on Misseri.

The Government does not identify or reproduce Hendrickson's "statements to federal agents regarding the arson and Bell Atlantic scheme" that it intends to offer, leaving the Court at a loss to determine the extent to which redaction is even possible. Misseri has submitted some handwritten notes entitled "Gary Hendrickson --> night of arson" which appears to chronicle the events of February 15, 1998. Assuming that those notes, whose author is unspecified, constitute notes from an interview with Hendrickson that the Government intends to use, the Court finds that redaction sufficient to comply with *Bruton* is impossible. The notes are littered with references to other Co-Defendants, identified by initials. Even if the notations of the Co-Defendants' initials were replaced with letters, symbols, or non-specific pronouns, the jury would nevertheless be able to infer from the notes that Hendrickson and his Co-Defendants were the parties involved. *Gray*, 523 U.S. at 195, 118 S.Ct. 1151.

Accordingly, the Court finds that the handwritten notes referred to by Misseri are inadmissible in their entirety in a joint trial under *Bruton*. Because Misseri's argument is premised on the "rule of completeness" discussed in *Burns*, the Court finds that the complete exclusion of the notes ameliorates any prejudice to Misseri that would result from admitting the notes in redacted form. In any event, the notes Misseri refers to would only be admissible through the testimony of the detective or investigator who made them, and Misseri is free to elicit evidence on cross-examination that (i) Hendrickson admitted participation in the arson; (ii) Hendrickson identified other individuals who participated in the arson; and (iii) Misseri was not one of the people identified by Hendrickson. Thus, to the extent that the omission of Misseri is exculpatory, he is able to present that evidence to the jury in a form that neither violates *Bruton* nor requires severance of the trials.

Therefore, Misseri's motion for severance is denied.

## B. As to the demands for a bill of particulars

Galasso, Misseri, and Hendrickson each move for a bill of particulars pursuant to Fed. R. Crim. P. 7(f). Galasso seeks details about the Government's allegations relating to the "enterprise" in the racketeering counts, and clarification of the allegations of "malice" and interstate commerce in the arson allegation. Misseri seeks particulars regarding the date of the Dorval murder, and extensive disclosure of facts relating to each of the other counts. Hendrickson requests details regarding his involvement in the alleged conspiracies.

■ The Court finds that the superseding indictment is sufficiently specific as to the essential elements of each count. An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and enables him to pursue the matter and not run afoul of future prosecutions for the same offense. *U.S. v. Walsh,* 194 F.3d 37, 44 (2d Cir. 1999); U.S. *v. Davidoff,* 845 F.2d 1151, 1154 (2d Cir.1988); *McKay,* 70 F.Supp.2d at 212. As the Second Circuit has stated:

> The function of a bill of particulars is to provide defendant with information about the details of the charge against him, if this is necessary to the preparation of his defense, and to avoid prejudicial surprise at trial.... A bill of particulars should be required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused.... *Acquisition of evidentiary detail is not the function of a bill of particulars....* So long as the defendant was adequately informed of the charges against him and was not unfairly surprised at trial as a consequence of the denial of the bill of particulars, the trial court has not abused its discretion.

*U.S. v. Torres,* 901 F.2d 205, 234 (2d Cir.), *cert. den.* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990) (emphasis added).

The superseding indictment is sufficiently specific. It tracks the language of the statute on each count, *McKay,* 70 F.Supp.2d at 212; *U.S. v. Aliperti,* 867 F.Supp. 142 (E.D.N.Y.1994), and sufficiently apprises the Defendants of enough specific detail surrounding each allegation to enable them to prepare a defense. In addition, the Government has made extensive disclosure of evidence to the Defendants and is under a continuing obligation to do so, largely ameliorating any need for a bill of particulars to flesh out allegations in the indictment. *Walsh,* 194 F.3d at 47 ("a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means").

Accordingly, the motions by Galasso, Hendrickson, and Misseri for a bill of particulars are denied.

## C. As to the motions for various discovery

Each of the Defendants has moved for various types of discovery. Specifically, Pistone seeks disclosure of the Government's evidence relating to his prior bad acts under Fed. R. Evid. 404(b) and prior convictions under Fed. R. Evid. 609(b); for disclosure of material favorable to the defense under *Brady v. Maryland,* 373 U.S. 83, 104, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) or for impeachment of the Government's witnesses under *Giglio v. U.S.,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) or hearsay declarants under *U.S. v. Orena,* 145 F.3d 551 (2d Cir.1998); for pretrial disclosure of Jencks Act materials, 18 U.S.C. § 3500; and for a witness list. Defendant Misseri seeks similar information as Pistone, and also requests expert witness disclosure pursuant to Fed. R. Crim. P. 16(e). Defendant Hendrickson requests *Brady* and *Giglio* material, as well as the identification of and leave to interview the Government's confidential informants under *Roviaro v. U.S.,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957).

The Government contends that it has disclosed all *Brady* and *Giglio* material; it has produced the information in its possession relating to prior bad acts or criminal histories of the Defendants; and it has provided all required information relating to its experts. To the extent that such discovery has not been produced, the Government is directed to *immediately* turn over all required materials.

■ As to the requests for early disclosure of Jencks Act materials, the statute, 18 U.S.C. § 3500, requires the government to produce statements by government witnesses only after the witness has testified at trial. Nothing in that Act provides a basis for the Court to direct the government to turn over statements prior to that time. *U.S. v. Algie*, 667 F.2d 569 (6th Cir. 1982); *U.S. v. Percevault*, 490 F.2d 126 (2d Cir.1974). Accordingly, the Court denies the requests for early production of Jencks Act materials.

■ As to Pistone's request for a witness list, he correctly notes that neither the Rules of Criminal Procedure nor statutory law requires the Government to produce such a list. Thus, the decision to require disclosure of such a witness list is within the Court's discretion and governed by weighing the benefits to the defendants of pre-trial investigation of the witnesses against the risk of witness intimidation. *U.S. v. Cannone*, 528 F.2d 296, 301 (2d Cir.1975). Here, the Government has alleged in prior detention hearings that threats have been made to at least one potential witness, and an effort made to suborn perjury with regard to another witness. Under these circumstances, and absent a showing of a particular need for the Defendants to obtain pre-trial notification of the Government's witnesses, Pistone's motion for a witness list is denied. *U.S. v. Belin*, 2000 WL 679138 (S.D.N.Y.2000); *U.S. v. Nieves*, 1998 WL 898342 (S.D.N.Y. 1998).

■ Finally in this regard, Hendrickson moved for an order requiring disclosure and permitting defense interviews of the Government's confidential informants. The Court has discretion to order the disclosure of a confidential informant's identity, and, in exercising that discretion, must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. *Roviaro v. U.S.*, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *U.S. v. Saa*, 859 F.2d 1067, 1073 (2d Cir.1988). However, disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense, and not merely because the informant was a participant in and witness to the crime charged. *Saa*, 859 F.2d 1073; *U.S. v. Belin*, 2000 WL 679138 at * 9–10. Here, Hendrickson has merely alleged that "some of the CIs and/or CWs claim to have participated directly in the charged acts." As established in *Saa* and *Belin*, Hendrickson's mere assertion that the Government's informants "participated directly" is insufficient to meet Hendrickson's burden of showing that disclosure is material to his defense. *U.S. v. Polanco*, 1997 WL 452389 (S.D.N.Y.1997), citing *U.S. v. Jimenez*, 789 F.2d 167, 171 (2d Cir.1986).

Accordingly, Hendrickson's motion for disclosure of the identify of the confidential informants is denied.

### D. As to Galasso's motion to strike

■ Galasso moves to strike the portion of the superseding indictment that alleges that the Defendants are affiliated with the Colombo organized crime family, and further seeks to strike references to the "Galasso crew." Fed. R. Crim. P. 7(d) permits the Court to strike from the indictment "irrelevant, inflammatory, or prejudicial" allegations.

In *U.S. v. Scarpa*, 913 F.2d 993, 1011–13 (2d Cir.1990), the Second Circuit affirmed the denial of a motion to strike a reference to the Colombo Family from an indictment charging the "Scarpa Crew" with various acts of racketeering, narcotics trafficking,

extortion, and a murder. The court held that "[i]n RICO cases, courts have refused to strike allegations of organized crime connections that 'serve' to identify the 'enterprise' and the means by which its members and associates conduct various criminal activities." *Id.* at 1013, *citing U.S. v. Napolitano*, 552 F.Supp. 465, 480 (S.D.N.Y.1982) *and U.S. v. Rastelli*, 653 F.Supp. 1034, 1055 (E.D.N.Y.1986). As in *Scarpa*, the identification of the Colombo Family in the superseding indictment serves to identify the Galasso crew "enterprise" and one of its objectives-- the payment of funds to alleged Colombo associate Joseph Franzese and other Colombo members. Accordingly, the Court finds that the allegation is relevant, but, as in *Scarpa*, denies Galasso's motion to strike without prejudice to renewal should the Government fail to offer evidence connecting the Galasso crew to the Colombo family at trial. 913 F.2d at 1012.

### E. As to Misseri's motion to dismiss

Misseri moves to dismiss Count 10 of the indictment as "facially insufficient." Count 10, which charges a conspiracy to launder money, also contains a section entitled "Forfeiture Allegation for Count Ten." Within the forfeiture section, the Government alleges that "if convicted of the offense set forth in Count Eleven of this Superseding Indictment, [Defendants] shall forfeit" certain property. As Misseri points out, there is no Count Eleven in the superseding indictment.

It is clear from the context, including the heading of the forfeiture allegation which reads *"Forfeiture Allegation for Count Ten"* (emphasis in original), that the Government seeks forfeiture pursuant to the money laundering allegation in Count Ten, and that the reference to "Count Eleven" within the body of that paragraph is simply a typographical error. Even assuming that the reference is an unpardonable error by the Government, the insufficiency of the forfeiture allegation of Count Ten provides no justification for dismissing the money laundering conspiracy charge. Count Ten sufficiently pleads a money laundering conspiracy. At best, the error could possibly warrant dismissal of only the forfeiture claim, but Misseri has not sought such relief.

Accordingly, Misseri's motion to dismiss Count Ten in its entirety is denied.

 Misseri also moves to dismiss the Subpart B, the arson conspiracy, of Racketeering Act Two in Count One, on the grounds that it fails to allege any overt act. Subpart B reads:

> On or about February 15, 1998, ... the Defendants ... together with others, did knowingly and intentionally conspire to damage and destroy by means of fire a building and other real and personal property used in activities affecting interstate commerce, to wit: the Hav-A-Home Kennel, 282 Brookville Road, Old Brookville, New York, in violation of New York Penal Law Sections 150.10 and 105.10.

Misseri is correct that Subpart B alleges only an agreement, and not an overt act in furtherance of that agreement, and that New York State law requires a conspiracy to be proven by both an agreement and an overt act. N.Y. Penal Law § 105.20. However, the Government correctly points out that the federal RICO statute was not intended to require the Government to plead state law crimes under 18 U.S.C. § 1961(1)(A) in accordance with the specific pleading requirements of state law. Rather, RICO's reference to crimes under state law merely define generally those generic crimes that fit within the definition of racketeering. *U.S. v. Bagaric*, 706 F.2d 42, 63 (2d Cir.1983). The Government correctly notes that the argument made by Misseri has previously been expressly rejected. *U.S. v. Dellacroce*, 625 F.Supp. 1387, 1391 (E.D.N.Y.1986).

Accordingly, Misseri's motion to dismiss Subpart B of Racketeering Act Two in Count One is denied.

### F. As to suppression

Pistone and Misseri both move for suppression of certain evidence.

Pistone seeks suppression of "any and all statements made by him," particularly statements made during his arrest and prosecution on the arson charge, as well as suppression of "any identification procedure regarding this indictment which was conducted with regard to the New York State prosecution of the arson charge." Pistone states that "the basis for [such requests] are information and belief the sources of which are proceeding in the New York State prosecution of the arson in the instant indictment, paperwork supplied by the prosecutor on the State case and conversations had with the Assistant district Attorney in charge of the prosecution of the New York State case."

The foregoing language is decidedly unclear, and the Court is unable to discern precisely why Pistone alleges that his statements and identification were improperly obtained and should be suppressed. Accordingly, Pistone's motion to suppress is denied without prejudice to renewal with a more complete and clear articulation of the issues involved.

Misseri seeks suppression of evidence relating to the search and seizure of his wallet in February 1996, and the search and seizure of his briefcase on April 10, 2000. Misseri alleges that in February 1996, he was dining in a restaurant with several individuals, including Joseph Franzese, when authorities entered the restaurant and arrested Franzese. According to Misseri, agents then patted him down, removed his wallet, and demanded that he produce identification. The agent then took Misseri's wallet and left the premises, looking for a photocopier, and returned about 10 minutes later telling Misseri that business cards he had in his wallet would be returned to him by mail. Misseri alleges that the search and seizure of his wallet and its contents was unlawful, as no cause existed for a *Terry* search.

In response, the Government alleges that Misseri was asked to produce identification, and agents observed police identification cards in his wallet, justifying a search in that Misseri identified himself as a car salesman. In addition, the Government contends that Misseri consented to allow agents to copy the contents of his wallet. Given this factual dispute, the Court finds that an evidentiary hearing is necessary.

In addition, Misseri moves to suppress the search and seizure of his briefcase. According to him, on April 10, 2000, he was riding in a taxicab that was pulled over, and agents arrested him pursuant to a warrant. The briefcase was left in the taxi, where agents retrieved it and allegedly opened and searched its contents.

■■■ The Government contends that it opened the briefcase prior to Misseri being handcuffed, after agents observed the handle of a weapon in it, at which time they discovered the weapon to be a starter's pistol, along with a tape recorder and tape containing a conversation between Misseri and Pistone. The Government also alleges that, even if Misseri was handcuffed at the time the briefcase was seized, the Government had an obligation to secure the briefcase and inventory it as part of normal arrest procedures. The Government correctly notes that suppression of evidence obtained in an improper search incident to an arrest will nevertheless be denied if an ordinary inventory search following the arrest would have inevitably yielded the same evidence. *U.S. v. Perea,* 986 F.2d 633, 644 (2d Cir.1993).

In is undisputed that Misseri was lawfully arrested pursuant to a warrant. Assuming the Government's representations are correct, and agents did indeed see the handle of a weapon in the briefcase prior to handcuffing Misseri, the Court finds that a search of the briefcase at that time would be appropriate to prevent him from utilizing that weapon. *Perea,* 986 F.2d at 643 ("justification for that exception is the need to ensure that the person arrested not have access to a weapon or to destruc-

tible evidence"). If Misseri was handcuffed or detained out of reach of the briefcase, a search incident to arrest would be inappropriate, but an inventory search of the briefcase would most likely have revealed the evidence. Nevertheless, there are factual disputes about the circumstances surrounding the search of the briefcase. Therefore, the Court finds that a suppression hearing should be held.

### CONCLUSION

Accordingly, the motions by Defendant Galasso Saverio Galasso III to sever his trial from his Co-Defendants pursuant to Fed. R. Crim. P. 14 and for a bill of particulars are DENIED. Galasso's motion to strike portions of the complaint pursuant to Fed. R. Crim. P. 7(f) is DENIED without prejudice to renewal at the close of the Government's case.

The motions by Defendant Pistone to sever his trial from his Co-Defendants and for certain pre-trial discovery are DENIED. Pistone's motion for suppression of statements and other evidence is DENIED without prejudice.

The motion by Defendant Misseri for certain pre-trial discovery; for a bill of particulars; for severance of his trial from his Co-Defendants; for dismissal of Count Ten of the indictment; and for dismissal of the arson conspiracy overt act alleged as Subpart B of Racketeering Act Two are DENIED. The Court directs that a suppression hearing on Misseri's motion to suppress evidence relating to the searches of his wallet and briefcase be held by United States Magistrate Judge William D. Wall at his earliest convenience. Counsel are directed to report to Judge Wall to fix a date for the hearing.

The motions by Defendant Hendrickson for severance of his trial from his Co-Defendants; for certain pre-trial discovery; and for a bill of particulars are DENIED.

**SO ORDERED.**