UNITED STATES of America,
Plaintiff-Appellant,

v.

Charles MEYERS and Jack Scoville,
Defendants-Appellees.

No. 75–1743.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 12, 1975.

Decided Feb. 12, 1976.

Rehearing and Rehearing En Banc
Denied May 21, 1976.

Henry A. Schwarz, U. S. Atty., Michael J. Nester, Asst. U. S. Atty., East St. Louis, Ill., for plaintiff-appellant.

Bruce N. Cook, E. St. Louis, Ill., James J. Gomric, Belleville, Ill., for defendants-appellees.

Before CUMMINGS, Circuit Judge, BAUER, Circuit Judge, and PERRY, Senior District Judge.*

PERRY, Senior District Judge.

Defendants Charles Meyers and Jack Scoville were indicted by the Grand Jury for the Eastern District of Illinois upon a charge that they entered into a conspiracy to affect commerce by extortion in violation of the Hobbs Act, 18 United States Code, Section 1951.[1] The defendants moved to dismiss the indictment and the District Court granted the motion. On appeal the Government asks this court to remand the case and direct the District Court to reinstate the indictment. We reverse and remand.

The indictment charged:

1. At times pertinent hereto defendants CHARLES MEYERS and JACK SCOVILLE were trustees of the East Side Levee and Sanitary District, East St. Louis, Illinois.

2. At other times pertinent hereto defendants CHARLES MEYERS and JACK SCOVILLE were candidates for trusteeship and trustees-elect for the East Side Levee and Sanitary District.

3. At times pertinent hereto, the trustees of the East Side Levee and Sanitary District occupied a position of public trust where through the exercise of their judgment, contracts were to be awarded to contractors and suppliers doing business with the East Side Levee and Sanitary District, East St. Louis, Illinois.

4. From on or about the month of September, 1972 to on or about January, 1973, in the Eastern District of Illinois, the defendants CHARLES MEYERS and JACK SCOVILLE and others did conspire to affect commerce by obtaining property of another, with his consent, induced under color of official right, that is to say CHARLES MEYERS and JACK SCOVILLE with others did conspire to obtain in excess of $6,000, individually, that the defendants were not entitled to, in consideration for their future official acts as trustees for the East Side Levee and Sanitary District so that the defendants CHARLES MEYERS and JACK SCOVILLE would suspend their independent and unbiased judgment on the merits when considering the awarding of contracts, all in violation of Title 18, United States Code, Section 1951.

In the defendants' motions to dismiss the indictment, they contended that they held no public offices at the time of the acts complained of, that they were merely candidates for office at that time, and that not being public officials at the time complained of they had not violated Title 18, Section 1951 and could not be prosecuted thereunder. The Government contended that while defendants were not public officials at the time of the payment of $6000.00 to each of them, defendants thereafter were elected and did become public officials; that they kept said sums of money after becoming public officials; that they conspired to do so and that said conspiracy continued after they became public officials; and that they were therefore liable for violation of the provisions of 18 U.S.C.

---

* Senior District Judge Joseph Sam Perry of the Northern District of Illinois is sitting by designation.

1. The statute provides in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in

violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

   *    *    *    *    *    *

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

   *    *    *    *   .*    * .

§ 1951. For the purpose of defendants' Motions to Dismiss, counsel for the parties entered into a stipulation to the following facts:

1. The defendants, MEYERS and SCOVILLE, took office as Trustees of the East Side Levee and Sanitary District on December 6, 1972, at 10:00 A.M. Neither defendant was a public office holder prior to December, 1972. Defendants were candidates for said office as a result of a primary election in March, 1972 and the defendants were elected to said office on November 7, 1972.

2. A meeting between the defendants and the complaining witnesses occurred during the month of October, 1972 at which the indictment alleges a conspiracy was formed.

3. If money was paid to the defendants, it is alleged said payment occurred in October, 1972 before the defendants took office, and the defendants retained said money through May, 1973.

In the District Court's order granting the motion to dismiss, the District Court assumed that the stipulated facts precluded any conspiracy and dismissed the indictment, thereby depriving the Government of its right to present evidence supporting the charge of conspiracy.

The indictment charged that Meyers and Scoville and others during a period of time commencing in or about September, 1972, and terminating in or about January, 1973, did conspire to affect commerce by obtaining property (in excess of $6000) of another with his consent and induced under color of official right. As indicated in the indictment, the substance of the conspiratorial agreement was that Meyers and Scoville conspired to obtain money in excess of $6000, individually,—money to which they were not entitled,—in consideration for their *future* official acts as trustees for the East Side Levee and Sanitary

District, so that they would suspend their independent and unbiased judgment on the merits when considering the awarding of contracts.

In the initial paragraph of its order granting the motions to dismiss,[2] the District Court stated:

This case presents the novel and interesting question whether candidates for political office can obtain property (*i. e.* $6000) from another with that person's consent induced under color of official right within the meaning of 18 U.S.C. § 1951. [Footnote omitted.] 395 F.Supp. at 1068.

In the penultimate paragraph of its order, the District Court concluded that

. . . A mere candidate for public office can not obtain property from another with that person's consent induced under color of official right. 395 F.Supp. at 1070.

■ We respectfully suggest that the issue as formulated by the lower court misses the mark. What the court appears to have overlooked is that Meyers and Scoville were not charged with the substantive offense of extortion; they were charged with conspiracy. Thus the question is not "whether candidates for political office can obtain property (*i. e.* $6000) from another with that person's consent induced under color of official right within the meaning of 18 U.S.C. § 1951"; rather, it is whether, within the meaning of the Hobbs Act, it is a crime for candidates for political office to *conspire* to affect commerce by extortion induced under color of official right during a time frame beginning before the election but not ending until after the candidates have obtained public office. As we said above, Meyers and Scoville were not charged with the substantive offense of extortion. They were charged with conspiracy to obtain property under color of official right. We agree with the Government that the indictment did not charge that they conspired "under color of official right." Rather, they

2. The District Court's order is published in *United States v. Meyers,* 395 F.Supp. 1067 (E.D.Ill.1975).

were charged with conspiracy to *obtain property* "under color of official right." In essence, however, *Meyers* and Scoville urge this court to hold that the statutory phrase "under color of official right" modifies the word "conspires" rather than the words "obtaining of property from another". This would be an unreasonable interpretation.

■ Both the phrase "under color of official right" and the phrase "obtaining of property from another" appear in the same subparagraph,—subparagraph (2) of paragraph (b) of § 1951,—and the phrase "obtaining of property from another" precedes the phrase "under color of official right". On the other hand, the only reference to conspiracy occurs in a different and parallel paragraph,— paragraph (a) of § 1951,—where the word "conspires" appears. Thus, in accordance with established canons of statutory construction,[3] we can only construe § 1951 to mean that the phrase "under color of official right" refers, relates back to, and modifies the phrase "obtaining of property of another", so that § 1951 proscribes, not the act of *conspiracy* under color of official right, but the act of *obtaining property* under color of official right.

More important, however, is the consideration of the Government's contention that even if the phrase "under color of official right" in § 1951(b)(2) were held to modify the word "conspires" in § 1951(a), the alleged conspiracy existed even after Meyers and Scoville took office. The Government alleges that a conspiracy was entered into at a time when Meyers and Scoville were candidates for public office, that the alleged conspiracy did not end until at least May of 1973, at which time Meyers and Scoville had been public officials for several months, and that through May of 1973, Meyers and Scoville allegedly retained the money they had earlier obtained from the contractors.

■ What Meyers, Scoville, and the court below overlooked is the crucial fac-

tor of *continuity* in the crime of conspiracy. It is well settled that a criminal conspiracy is a continuing crime in that the conspiracy continues until the goal for which it was formed has been attained. *See, e. g., United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, 1026 (1974), *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974). Here the object of the conspiracy was the suspension of unbiased judgment in consideration for money received. The object of the conspiracy was not the suspension of the unbiased judgment of a private individual, but was the suspension of the unbiased judgment of a public official. This point seems to have been missed by the District Court as well as by Meyers and Scoville.

■ In view of the foregoing, we conclude that in the instant case the alleged conspiracy to obtain property under color of official right constitutes a crime under the Hobbs Act, even though Meyers and Scoville were private citizens at the inception of the conspiratorial agreement.

In its Brief in Opposition to the Defendants' Motion to Dismiss, the Government asserted that Meyers and Scoville were in a viable position to obtain public office at the time they entered into the conspiracy, and that this viable position established a reasonable basis for belief on the part of the contractor-victims that Meyers and Scoville had the power to control the awarding of contracts in the future. The Government then cited two cases in support of this proposition: *United States v. Emalfarb,* 484 F.2d 787 (7th Cir. 1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973), and *United States v. Price,* 507 F.2d 1349 (4th Cir. 1975). The District Court in its order states that these cases "do not support [the Government's] proposition and are clearly distinguishable."

■ After discussing *Emalfarb* and *Price,* the court then states that in both of these cases the defendants raised the

---

**3.** See 2A Sutherland, *Statutes and Statutory Construction* (4th ed. 1973), §§ 45.12, 47.01, 47.26, 59.06.

defense of impossibility, whereas the defendants in the instant case do not. True, in the opening paragraph of their Reply Memorandum, Meyers and Scoville explicitly disclaimed that they were raising impossibility of law or fact as a defense; however, in their Supplemental Reply Memorandum they ask:

. . . Why was it *impossible* for the defendants to conspire "to obtain property under color"? Because the Government's stipulation clearly states that the agreement was that the "property" be obtained prior to the defendant's election, and, in fact, the "property" was "obtained" prior to their election. [Emphasis added.]

Moreover, we agree with the Government that the concept of legal or factual impossibility as one basis for dismissing the indictment is implicit in the formulation of the issue presented to the District Court by Meyers and Scoville in their Memorandum in Support of Defendants' Motion to Dismiss, *viz.,*

The issue squarely put is: Can a private citizen, who has been nominated for office, but not elected, extort money under color of official right.
. . .

In essence, Meyers and Scoville contend that in order to violate the "under color of official right" part of the Hobbs Act, one must be a public official, and inasmuch as Meyers and Scoville were merely nominated for office but had not attained office, it was therefore impossible for them to violate that part of the Hobbs Act. We recognize that courts have been reluctant to accept the defense of impossibility when the charge is conspiracy, the reason being that such charge focuses primarily on the *intent* of the individual defendants. Therefore the impossibility that the defendants' conduct would result in consummation of the contemplated substantive crime is not persuasive or controlling. *See, e. g., Beddow v. United States,* 70 F.2d 674 (8th Cir. 1934), where the court held that there may be conspiracy to defraud the United States despite the fact that the fraud was impossible of commission because the forged securities were not witnessed by the appropriate official.

■ The Government has invited our attention to a very recent case wherein the defendant was charged with violating the Hobbs Act "under color of official right" even though he had no *de jure* authority. In *United States v. Mazzei,* 521 F.2d 639 (3rd Cir. 1975), the defendant Mazzei, a state senator, was convicted of violating the Hobbs Act by taking money in exchange for the exercise of political influence over two decisions made in a state executive branch department, despite the fact that Mazzei had no official position in or control over that department. The Court of Appeals concluded that the evidence supported a finding that payments to Mazzei were induced by an exploitation of the payor's reasonable belief that Mazzei's position as a state senator provided Mazzei with effective control over the state leases involved in the case even though Mazzei lacked *de jure* authority to act. In an *en banc* decision, the Court of Appeals affirmed Mazzei's conviction and held:

. . . But in order to find that defendant acted "under color of official right," the jury need not have concluded that he [Mazzei] had actual *de jure* power to secure grant of the lease so long as it found that Kelly [the victim] held, and defendant exploited, a reasonable belief that the state system so operated that the power in fact of defendant's office included the effective authority to determine recipients of the state leases here involved.
. . . 521 F.2d at 643.

The court found that the evidence, when viewed in a light most favorable to the Government, permitted the jury to find that Kelly's belief that Mazzei had the *de facto* power to influence the State's leasing decisions was reasonable. As indicated in the indictment in the instant case, the Trustees of the East Side Levee and Sanitary District had the *de jure* power to award contracts, and the contractor-victims allegedly purchased the biased judgment of Meyers and Scoville, to be exercised after they attained

office. In short, Meyers and Scoville are charged with having sold the *de jure* power which they would acquire in the future. In the instant case, the motivation for payment by the contractor-victims of Meyers and Scoville thus focused not merely on a *de facto* power of influence-peddling, but on the *de jure* power which Meyers and Scoville would acquire when and after they became trustees. As we said in *United States v. Braasch*, 505 F.2d 139, 151 (7th Cir. 1974), *cert. denied*, 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975):

> . . . So long as the motivation for the payment focuses on the recipient's office, the conduct falls within the ambit of 18 U.S.C. § 1951. . .

The conviction of Mazzei was affirmed even though he never pretended to hold any executive department office nor did he pretend that he could personally award the leases.

We think that it is no less of a crime under the Hobbs Act to sell one's public trust before, rather than after, one is installed in public office. We hold that the conspiracy of Meyers and Scoville as charged in the indictment constitutes a crime within the meaning of the Hobbs Act. Therefore the indictment should not have been dismissed. Accordingly, the order of the District Court granting the motion to dismiss the indictment is reversed and the cause is remanded for the purpose of reinstating the indictment.

Reversed and remanded.