PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2489
_____

UNITED STATES OF AMERICA,
                                        Appellant

v.

LOUIS MANZO; RONALD MANZO
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 2-09-cr-00759-001 and 002)
District Judge:  Honorable Jose L. Linares
_____

Argued January 11, 2011
Before:  RENDELL, AMBRO and FISHER, *Circuit Judges*.

(Filed: February 17, 2011)

Mark E. Coyne, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ  07102

Glenn J. Moramarco, Esq. (Argued)
Office of United States Attorney
Camden Federal Building & Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ  08101
        *Counsel for Appellant*

John D. Lynch, Esq. (Argued)
1814 Kennedy Boulevard
Union City, NJ  07087
        *Counsel for Appellee, Louis Manzo*

Samuel R. DeLuca, Esq.
George T. Taite, Esq.
De Luca & Taite
3451 Kennedy Boulevard
Jersey City, NJ  07307
        *Counsel for Appellee, Ronald Manzo*

_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

Defendants Louis Manzo ("Louis") and Ronald Manzo ("Ronald") were indicted as the result of a federal investigation into public corruption and money laundering in Hudson County,

New Jersey. They were charged with, *inter alia*, conspiracy to commit extortion under color of official right in violation of 18 U.S.C. § 1951(a) (the "Hobbs Act") and attempted extortion under color of official right in violation of the Hobbs Act. The District Court dismissed the conspiracy and attempt charges because it concluded that neither Louis, an unsuccessful mayoral candidate, nor Ronald, his brother and campaign manager, acted "under color of official right." On appeal, the government argues that the conduct is within the scope of the Hobbs Act based on the principles underlying the inchoate crimes of attempt and conspiracy. For the reasons stated herein, we will affirm the judgment of the District Court. Specifically, we hold that acting "under color of official right" is a required element of an extortion Hobbs Act offense, inchoate or substantive, when that offense does not involve threatened force, violence or fear.

I.

The parties are in basic agreement on the facts. In May 2006, Solomen Dwek was arrested by the Federal Bureau of Investigation ("FBI") on bank fraud charges. He subsequently agreed to become a cooperating witness for the FBI, assisting with an investigation into public corruption. In that role, Dwek posed as a real estate developer who was looking for assistance expediting his development projects through local government processes. Dwek surreptitiously recorded many of the meetings he attended. The investigation, dubbed "Bid Rig III," resulted in the arrest of numerous Jersey City, New Jersey politicians on

3

July 23, 2009.[1] Among those arrested were Louis and Ronald Manzo (collectively, the "Manzos").

Louis was an unsuccessful Jersey City mayoral candidate in the election held on May 12, 2009. Although he had previously held public office in other capacities, he was not a public official at the relevant time here and did not pretend to be one. Ronald is the brother of Louis, and acted as his campaign manager and political advisor for the 2009 mayoral election.

Two individuals who previously accepted corrupt payments from Dwek, Edward Cheatam and Maher Khalil,[2] suggested that Dwek meet with Louis to protect his real estate development interests in Jersey City. Accordingly, the Manzos, Dwek and Cheatam participated in a series of six meetings, spanning from February 2009 to April 2009. Over the course of those meetings, Dwek agreed to make cash payments and illicit contributions to Louis's campaign in exchange for his future official assistance, action and influence. The Manzos accepted three cash payments from Dwek totaling $27,500 prior to the election. Dwek also agreed to pay the Manzos an additional $17,500 after Louis was elected, in exchange for Louis's official assistance as mayor.

---

[1] We note that several Bid Rig III defendants have pled guilty to similar charges. Other Bid Rig III cases have been stayed by the District Court pending the outcome of this appeal.

[2] Cheatam served as a Commissioner on the Jersey City Housing Authority and was also the affirmative action officer for Hudson County. Khalil was an employee of the Jersey City Department of Health and Human Services.

4

The payments were made in furtherance of two separate schemes. First, Louis agreed to expedite approvals of a particular Jersey City real estate development project known as the "Garfield Development." In exchange, Dwek paid the Manzos $20,000 before the election and promised to pay an additional $10,000 after Louis was elected. Second, Louis agreed to promote Khalil in exchange for a payment of $7,500 before the election and the promise of an additional $7,500 after the election.

The election was held on May 12, 2009, and Louis received 26% of the vote, finishing second in a five-candidate field. Mayor Jerramiah Healy received 53% of the vote and was re-elected. Because Louis was not elected mayor, he did not receive either of the two post-election payments that were agreed upon in furtherance of the two schemes.

On October 6, 2009, a grand jury in the District of New Jersey returned a six-count indictment, which charged the Manzos with: (1) one count of conspiracy to commit extortion under color of official right in violation of the Hobbs Act; (2) three counts of attempted extortion under color of official right in violation of the Hobbs Act; and (3) two counts of travel in interstate commerce to promote, carry on and facilitate bribery in violation of 18 U.S.C. §§ 1952(a)(3), 2. On April 20, 2010, the grand jury returned a superseding indictment with a seventh count, charging the Manzos with mail fraud in violation of 18 U.S.C. § 1341.

Louis Manzo filed a pretrial motion seeking dismissal of Counts One through Four, which charged the Hobbs Act

5

conspiracy and attempt offenses. For the government to prove a violation of the Hobbs Act using the "under color of official right" theory, it "need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Evans v. United States*, 504 U.S. 255, 268 (1992). Louis argued that the government could not meet this burden because at all relevant times he was merely a candidate and did not act "under color of official right" as a public official. Ronald joined in the motion.

The District Court granted the Manzos' motion seeking dismissal of the Hobbs Act attempt and conspiracy charges. It applied the rule of lenity, and held that the conduct was "not clearly within the scope of the Hobbs Act even if only conspiracy or attempt [was] charged." *United States v. Manzo*, 714 F. Supp. 2d 486, 496 (D.N.J. 2010). Specifically, the District Court held that because neither Louis nor Ronald held public office, they did not act "under color of official right." *Id.* at 500. It therefore dismissed the conspiracy and attempt charges because the indictment insufficiently alleged the elements of the offense intended to be charged. The government timely appealed.

II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3731.

We have plenary review over the sufficiency of an indictment to charge an offense. *United States v. Yusuf*, 536

6

F.3d 178, 184 (3d Cir. 2008). An indictment is "sufficient so long as it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (internal quotation marks omitted). We presume that the factual allegations in an indictment are true for the purpose of this analysis. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990).

III.

This case presents a significant and novel question, creatively framed and well-presented by the government. In essence, it asks us to consider whether an unsuccessful candidate for public office can attempt or conspire to obtain property from another with that person's consent induced under color of official right within the meaning of the Hobbs Act.[3] Whether the Manzos can be charged with conspiracy or attempt

---

[3] For the purpose of this appeal, both Ronald and Louis are treated the same. A private citizen may be convicted of extortion under the Hobbs Act "if that private citizen either conspires with, or aids and abets, a public official in the act of extortion." *United States v. Saadey*, 393 F.3d 669, 675 (6th Cir. 2005); *see also United States v. McFall*, 558 F.3d 951, 958-59 (9th Cir. 2009); *United States v. Tomblin*, 46 F.3d 1369, 1382 (5th Cir. 1995).

to violate the Hobbs Act turns initially on whether they acted "under color of official right."[4]

The District Court concluded that the Manzos were not acting "under color of official right" because: (a) the Hobbs Act is ambiguous and the legislative history supports a narrow construction of the phrase; (b) the congressional purpose of the statute corresponds with a narrow construction; and (c) the rule of lenity applies to narrow the application of the ambiguous statute. Moreover, the District Court concluded that acting "under color of official right" was a requirement even for prosecution of an inchoate violation of the Hobbs Act that did not involve threatened force, violence or fear. We agree and conclude that, because the Manzos did not act "under color of official right," they may not be charged with attempt or conspiracy to extort in violation of the Hobbs Act.

---

[4] The other elements of a Hobbs Act violation were clearly met in this case. First, both parties concede that the Manzos obtained property from another with his consent. Second, the interstate commerce element is satisfied. Even though the agreement was local and the product of a government sting operation, we require only "proof of a [potential] de minimis effect on interstate commece." *United States v. Urban*, 404 F.3d 754, 766 (3d Cir. 2005) (discussing *Lopez-Morrison-Jones* analysis). We have previously found that both local and fictitious schemes satisfy the interstate commerce element of a Hobbs Act violation. *See United States v. Jannotti*, 673 F.2d 578, 590-94 (3d Cir. 1982). Accordingly, the interstate commerce element is met here.

A.

To determine whether the Manzos' conduct falls within the Hobbs Act, we begin with the plain meaning of the "under color of official right" language. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984) ("If the intent of Congress is clear, that is the end of the matter[.]"); *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000). The Hobbs Act provides, in pertinent part:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

> (b) As used in this section—

> …

> (2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

18 U.S.C. § 1951.

9

The scope of the term "under color of official right" is not readily apparent from the face of the statute. Indeed, courts have grappled with ambiguity embedded in the text of the Hobbs Act, and in particular, the "under color of official right" language. The ambiguity has led some judges to comment that "the phrase 'under color of official right', standing alone, is vague almost to the point of unconstitutionality." *United States v. O'Grady,* 742 F.2d 682, 695 (2d Cir. 1984) (Van Graafeiland, J., concurring in part and dissenting in part). The debate over the interpretation of the "under color of official right" language is ongoing; "[o]ther defendants are at loggerheads with the United States on this question; district judges disagree about the subject; . . . [w]e cannot settle the scope of the Hobbs Act; only Congress or the Supreme Court can do so." *United States v. McClain*, 934 F.2d 822, 836 (7th Cir. 1991) (Easterbrook, J., concurring). We have grappled previously with the ambiguity of the Hobbs Act language, and, in an attempt to shed light on the language, thoroughly discussed its legislative history. *See United States v. Mazzei*, 521 F.2d 639, 649-56 (3d Cir. 1975) (en banc) (Gibbons, J., dissenting) (discussing legislative history of "under color of official right"); *see also United States v. Cerilli*, 603 F.2d 415, 424 (3d Cir. 1979) (Aldisert, J., dissenting) (same). However, we have yet to confront squarely the question before us.

Because the statute is not clear on its face, we normally look to legislative history to discern congressional intent. *See*, *e.g.*, *Bruesewitz v. Wyeth Inc*., 561 F.3d 233, 244 (3d Cir. 2009). Unfortunately, when the Hobbs Act was passed, no mention was made of the meaning of extortion "under color of official right" in the legislative history. Because "[t]he legislative history is

10

sparse and unilluminating with respect to the offense of extortion," the Supreme Court has directed us to presume that Congress intended to adopt the common law meaning of a phrase. *Evans*, 504 U.S. at 264.

"Extortion is one of the oldest crimes in Anglo-American jurisprudence." *Id.* at 278 (Thomas, J., dissenting). At common law, the phrase "extortion under color of official right" was a legal term of art that encompassed only the actions of public officials. *Id.* at 260; *Mazzei*, 521 F.2d at 650. Extortion was defined as "any officer's unlawfully taking, by color of his office, from any man, any money or thing of value that is not due to him." 4 W. Blackstone, Commentaries.[5] The "essence of the offense was the abuse of the public trust that inhered in the

---

[5] Blackstone used the phrase "by color of his office," rather than "under color of official right," which appears in the Hobbs Act. This difference is immaterial because the exact language in the Hobbs Act was likely derived from an influential treatise on the criminal law of England, written by William Hawkins, which said:

> [I]t is said, [t]hat extortion in a large sense signifies any oppression under color of right; but that in a strict sense, it signifies the taking of money by any officer, by color of his office, either where none at all is due, or not so much is due, or where it is not yet due.

*Evans v. United States*, 504 U.S. 255, 261 n.4 (1992) (quoting 1 W. Hawkins, Pleas of the Crown 316 (6th ed. 1787)).

11

office." *Mazzei*, 521 F.2d at 650. Early case law demonstrated a strict adherence to the narrow common law construction of the phrase:

> The offense consists in the oppressive misuse of the exceptional power with which the law invests *the incumbent of an office. It is thus apparent that the crime of extortion is committable only by an officer.* The officer need not possess a legal title to the office whose functions he executes. A person who serves as an officer, and claims to be one[,] is estopped to deny his official appointment. 2 Bish. Cr. Law, s 392. So it appears that a de facto as well as a de jure officer is punishable for extortion, as he is for any other malfeasance in office. *But an official character, either de facto or de jure, is essential.* The indictment is drawn in the usual form, and charges that the defendants were officers, and, by color of their office, extorted. This is a material averment, proof of which is absolutely required to support a conviction.

*Id*. (quoting *Kitby v. State*, 31 A. 213, 213-14 (N.J. 1894)) (emphasis added). Accordingly, common law extortion, which extended only to the actions of a public official or someone acting with the power of a public official, does not encompass the Manzos' conduct.

The statutory offense of extortion mirrors the narrow common law interpretation. The word "extortion," as used in

12

the Hobbs Act, first appeared in the Anti-Racketeering Act of 1946 ("1946 Act"), which amended the Anti-Racketeering Act of 1934 ("1934 Act"). The 1934 Act addressed primarily labor racketeering, but also proscribed an offense that we now define as extortion: obtaining property "under color of official right." *Mazzei*, 521 F.2d at 652. The 1934 Act was interpreted narrowly in *United States v. Teamsters Local 807*, 315 U.S. 521 (1942), which ultimately led to its amendment in 1946. The 1946 Act broadened the description of coercive extortion to include "threatened force or fear," but merely carried forward the "under color of official right" language. *Mazzei*, 521 F.2d at 652. Accordingly, we look back to the legislative history surrounding the enactment of the 1934 Act to discern any legislative history relevant to the "under color of official right" language. *Id*.

There is surprisingly little legislative history accompanying the 1934 Act, and what little exists reveals that it "was [not] intended to empower federal authorities to police influence peddling in the political processes of the states." *Id*. The 1934 Act was proposed by the Senate and initially contained no mention of the phrase "under color of official right." *Id*. After passing the Senate, it was submitted to the House, where it was completely amended. *Id*. The House revision added the phrase "under color of official right" for the first time, but a letter explaining the revisions failed to mention the rationale for inclusion of the phrase. *Id.* The omission "suggests that the draftsmen did not intend the prohibition to reach conduct not extortionate at common law." *Id*. at 653.

13

In fact, we can trace the identical "under color of official right" language back to the New York Penal Law of 1909, which, in turn, borrowed the language from a penal code prepared by David Dudley Field and others (the "Commissioners"). Commissioners of the Code, The Penal Code of the State of New York (1865). The Field version provided: "Extortion is the obtaining of property from another, with his consent, induced by a wrongful use of force or fear, or under color of official right." *Id*.

In an explanatory note to the Field version, the Commissioners cited to *People v. Whaley*, 6 Cow. 661 (N.Y. Sup. Ct. 1827), for the derivation of the "under color of official right" language. *Whaley* involved a common law extortion suit where the presiding justice ultimately collected a fee to which he was not entitled under the law. *Id*. at 661. The court found that the fee had been extorted "under color of official right." *Id*. The court defined the offense as follows:

> Extortion signifies, in an enlarged sense, any oppression under color of right. In a stricter sense, it signifies the taking of money by any officer, by color of his office; either, where none at all is due, or not so much due, or when it is not yet due.

*Id*.

Field's definition of extortion, derived from *Whaley*, was first enacted verbatim into the New York Penal Code of 1881, ch. 676, section 552. The drafters also included Section 556 to

14

expand upon the definition of extortion committed "under color of official right." *Mazzei*, 521 F.2d at 654. Section 556 provided that:

> A public officer, or a person pretending to be such, who unlawfully and maliciously, under pretense of color or official authority,
>
> 1. Arrests another, or detains him against his will; or
>
> 2. Seizes or levies upon another's property; or
>
> 3. Dispossesses another of any lands or tenements; or
>
> 4. Does any other act, whereby another person is injured in his person, property, or rights;
>
> Commits oppression and is guilty of misdemeanor.

The New York Penal Code of 1909 later adopted Section 556 as well as the "under color of official right" language. "The New York statute intended to proscribe common law extortion which required an act or pretended act in an official capacity." *Mazzei*, 521 F.2d at 654. The statutory language tracing back to 1827 reveals that "the portion of the [Hobbs Act] that refers to official misconduct continues to mirror the common-law definition." *Evans*, 504 U.S. at 264. Extortionate conduct committed "under color of official right" must be action in an official capacity or a pretended act in an official capacity, which

15

means one pretends to hold an office that he in fact does not. Therefore, we conclude that because the Manzos neither acted nor pretended to act in an official capacity, their conduct was not "under color of official right."[6]

---

[6] As a general rule, only public officials may be charged using the "under color of official right" theory. *United States v. Kenny*, 462 F.2d 1205, 1229 (3d Cir. 1972). However, we do not assert that a candidate for public office may never violate the Hobbs Act by acting "under color of official right." Indeed, the Supreme Court has considered a Hobbs Act question involving a candidate for re-election to public office. In *McCormick v. United States*, 500 U.S. 257 (1991), the Supreme Court considered whether campaign contributions received "under color of official right" by a successful candidate required a quid pro quo element to constitute a Hobbs Act violation.

The Supreme Court distinguished between valid "political contributions" and extortion under the Hobbs Act. It held that a candidate running for re-election could violate the Hobbs Act by accepting certain bribes. It noted that

> [p]olitical contributions are of course vulnerable if induced by the use of force, violence or fear. The receipt of such contributions is vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts

16

B.

The narrow common law reading of the "under color of official right" language is also consistent with congressional purpose. *Mazzei*, 521 F.2d at 645. Congress sought to proscribe coercive activity through enactment of the Hobbs Act. Under the terms of the Hobbs Act, a person can only commit extortion in one of two ways: (1) through threatened force, violence or fear or (2) under color of official right. *See* 18 U.S.C. § 1951(b)(2). Both of these types of extortion are inherently coercive. The District Court found that the Manzos' actions did not involve any coercion, and were thus outside the ambit of the Hobbs Act.

The government argues that the District Court erred in inserting a "coercion requirement" into the Hobbs Act. This argument mischaracterizes the District Court's reasoning. In exploring the congressional purpose underlying the Hobbs Act, the District Court correctly apprehended that Congress sought to criminalize only coercive exchanges. In essence, when

---

> that his official conduct will be controlled by the terms of the promise or undertaking. This is the receipt of money by an elected official under color of official right within the meaning of the Hobbs Act.

*Id*. at 273. Unlike McCormick, Louis was not a public official at the time of the events in question. He was therefore not an "*official* assert[ing] that his official conduct [would] be controlled by the terms." *Id*. (emphasis added).

17

proceeding under a "color of official right" theory, the "misuse of public office is said to supply the element of coercion." *United States v. Hathaway*, 534 F.2d 386, 393 (1st Cir. 1976) (quoting *Mazzei*, 521 F.2d at 644-45). Therefore, while the element of coercion is subsumed in the "under color of official right" theory, it is not a separate element that the government must prove. Rather, coercion is merely the justification for permitting a prosecution under the Hobbs Act.

The government argues that the implicit coercion requirement was met because Louis agreed and intended to obtain additional cash from Dwek *after* being elected mayor and in exchange for exercising his official powers as mayor. This argument is unpersuasive. The Manzos never acted "under color of official right" and never used force. Therefore, their actions were not of the coercive type targeted by Congress in the Hobbs Act.[7]

---

[7] Instead, as the Manzos point out, Congress recognizes and targets candidates as a distinct class under the criminal law. Under 18 U.S.C. § 599:

> Whoever, being a candidate, directly or indirectly promises or pledges the appointment, or the use of his influence or support for the appointment of any person to any public or private position or employment, for the purpose of procuring support in his candidacy shall be fined under this title or imprisoned not more than one year, or both; and if the violation was willful, shall be fined under this

18

In accordance with the legislative history, the congressional purpose underlying the Hobbs Act and centuries of interpretation of the phrase "under color of official right," we conclude that the Manzos were not acting "under color of official right," as defined in the Hobbs Act.[8]

## C.

Having concluded that the Manzos did not act "under color of official right," we must determine whether they nonetheless may be prosecuted for the inchoate offenses of conspiracy or attempt. The government argues that the

title or imprisoned not more than two years, or both.

Although this statute only applies to federal candidates, not state candidates, it reveals Congress's recognition that candidates should be treated as a separate class under the law.

[8] We do not use the rule of lenity to reach this conclusion because we find that the statutory text is sufficiently clear after examining the legislative history and congressional purpose of the Hobbs Act. However, we note that if we were unable to clarify the text, the rule of lenity would provide an additional basis to affirm the District Court. The rule of lenity applies to ambiguous applications of the Hobbs Act, *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393, 409 (2003), and "ensures there is fair warning of the boundaries of criminal conduct and that legislatures, not courts, define criminal liability." *United States v. Edmonds*, 80 F.3d 810, 821 (3d Cir. 1996) (en banc) (internal citation and quotation marks omitted).

19

conspiracy count is valid because both elements of a conspiracy are met: (1) criminal intent and (2) an overt act. Specifically, the government argues the Manzos' criminal intent "crystallized" when they agreed to accept future payments in exchange for future political favors. It contends that when the Manzos accepted down payments in furtherance of this scheme, this constituted an overt act substantiating a charge for conspiracy.

The government also argues that the attempt counts are valid because both elements of an attempt are met. An attempt conviction "requires evidence that [the defendants] (1) acted with the requisite intent to violate the statute, and (2) performed an act that, under the circumstances as [they] believe[] them to be, constitute[d] a substantial step in the commission of the crime." *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006). It contends that when the Manzos accepted down payments in furtherance of the schemes, this constituted a substantial step.

Neither party disputes that if every contingency upon which this case is based had occurred (if Louis had won the election, accepted money as mayor of Jersey City, and subsequently misused his public office), the Manzos would have been guilty of a prototypical, substantive Hobbs Act violation. However, the two parties dispute the importance of Louis's failure to obtain office. The government maintains that his failure to obtain office constitutes a factual impossibility, which is not a defense to conspiracy or attempt. *See*, *e.g.*, *United States v. Williams*, 553 U.S. 285, 300 (2008); *United States v. Hsu*, 155 F.3d 189, 199 (3d Cir. 1998). The Manzos argue, and

the District Court agreed, that acting "under color of official right" is a required status element of any Hobbs Act violation, inchoate or substantive, that does not involve threatened force, violence or fear.

We agree that "[t]he Hobbs Act, by its own terms, encompasses the inchoate offenses of attempt and conspiracy to extort." *United States v. Jannotti*, 673 F.2d 578, 592 (3d Cir. 1982) (en banc). Moreover, the government need not prove every substantive element of an offense to establish an inchoate offense. *See United States v. Feola*, 420 U.S. 671, 694 (1975) ("The law of conspiracy identifies the agreement to engage in a criminal venture as an event of sufficient threat to social order to permit the imposition of criminal sanctions for the agreement alone, plus an overt act in pursuit of it, regardless of whether the crime agreed upon actually is committed."). In fact, a Hobbs Act conspiracy charge does not even require that "'the ends of the conspiracy were from the very inception of the agreement objectively []attainable.'" *Hsu*, 155 F.3d at 203 (quoting *Jannotti*, 763 F.2d at 591). We also agree that factual impossibility, or the fact that the agreement was "objectively unattainable," is not a defense to a charge of conspiracy or attempt. *Hsu*, 155 F.3d at 203. We disagree, however, with the importance of Louis's failure to obtain public office.

In support of its argument that this case turns on factual impossibility, the government points to *United States v. Ledesma-Cuesta*, 347 F.3d 527 (3d Cir. 2003). In that case, the defendant was charged with attempted possession with intent to distribute cocaine on a vessel subject to the jurisdiction of the United States, in violation of the Maritime Drug Law

21

Enforcement Act ("MDLEA"). The MDLEA makes it a crime to attempt or conspire to "board a vessel subject to the jurisdiction of the United States," and "possess with intent to manufacture or distribute a controlled substance." 46 App. U.S.C. § 1903(a). Ledesma-Cuesta had four kilograms of cocaine aboard a vessel bound for Philadelphia, but he was outside the territorial waters of the United States when he was discovered. We concluded that this satisfied the requirements of attempt, an inchoate offense, because "he had already taken substantial steps toward possessing with intent to illegally distribute the cocaine in U.S. customs waters, making his actual location at the time of the apprehension immaterial." *Ledesma-Cuesta*, 347 F.3d at 532. Indeed, we noted that "[t]he case before us, then, is the exact type of case the MDLEA was designed to address: one in which the defendant is caught on the high seas, with drugs intended for illegal distribution once he reaches U.S. territory." *Id.*

*Ledesma-Cuesta* is distinguishable from the facts at hand because this is *not* the "type of case the [Hobbs Act] was designed to address."[9] *Id.* The Hobbs Act is intended to address a situation where a defendant is caught in public office, promising to misuse his office once he receives payment. Here, the government seeks to extend inchoate principles to gloss over the failure of the *central* status element of an "under color of

---

[9] The Manzos seek to distinguish this case on the basis that possessing drugs is always an illegal enterprise. This distinction is not compelling because, at a minimum, the Manzos acted in violation of state campaign finance laws.

22

official right" Hobbs Act violation: acting "under color of official right."[10]

---

[10] We also note that *United States v. Tykarsky*, 446 F.3d 458 (3d Cir. 2006), is distinguishable. There, the defendant was charged with interstate travel to engage in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b), and using an interstate facility to attempt to persuade a minor to engage in illegal sexual activity, in violation of 18 U.S.C. § 2422(b). Tykarsky argued that the indictment was insufficient because an undercover FBI agent was posing as a 14-year old girl, and therefore because no minor was actually involved in the charged offenses, it was legally impossible for him to commit the charged crime. We observed that the distinction between legal impossibility and factual impossibility was "elusive[]" and that "many jurisdictions [have] eschew[ed] the distinction between legal and factual impossibility and abolish[ed] the defense altogether." *Id.* at 466. However, we held that legal impossibility can sometimes be a defense to a crime, depending on legislative intent. *Id.* We concluded that the legislative history of § 2423(b) and § 2422(b) made clear that legal impossibility was not a defense to that particular crime, and it was sufficient that Tykarsky attempted to engage in illicit sexual conduct with a minor. *Id.* at 468-69. In contrast, the legislative history does not clearly extend application of the Hobbs Act to this circumstance. It is not sufficient that the Manzos attempted to gain the status of acting "under color of official right." We leave for another day whether legal impossibility could be a defense to certain Hobbs Act conspiracy charges and from whose perspective we would analyze the conspiracy, the

23

On the other hand, we have sustained a proper charge for conspiracy to commit a Hobbs Act violation where a non-status element of the offense was not met. In *United States v. Jannotti*, defendants Jannotti and Schwartz were convicted by a jury of conspiracy to extort in violation of the Hobbs Act. 673 F.2d 578. At the time of the acts in question, Schwartz was president of the Philadelphia City Council and Jannotti was the Council's majority leader. Both Schwartz and Jannotti accepted bribes from a cooperating witness for the FBI as part of the ABSCAM government operation designed to reveal government corruption. The district court set aside the verdict and dismissed the conspiracy count for lack of jurisdiction. Specifically, the district court concluded that because the scheme and the money were all entirely fictitious, there was no effect on interstate commerce. We reversed and relied on the principle that "[a]ll that was necessary, in addition to an overt act, was that the intended future conduct they had agreed upon include[d] all the elements of the substantive crime." *Id.* at 593 (quoting *United States v. Rose*, 590 F.2d 232, 235 (7th Cir. 1978)). Accordingly, we ruled that the "defendants' plan to transport the goods interstate, even though unattainable from the outset, sufficiently impinged on an area of federal concern to justify federal regulation and prohibition." *Jannotti*, 673 F.2d at 593.

The facts in *Jannotti* are directly analogous to the facts in *Ledesma-Cuesta* and distinguishable from the facts here. *Jannotti* represents the proper circumstances that support a charge for conspiracy to commit a Hobbs Act violation. In contrast to *Jannotti*, neither Louis nor Ronald ultimately acted

---

defendant's or the victim's.

24

"under color of official right," the central status element of a Hobbs Act "under color of official right" violation. Accordingly, their actions do not sustain a charge for conspiracy or attempt.

Although this is a question of first impression in our Circuit, we note that the United States Court of Appeals for the Seventh Circuit decided a factually similar case, *United States v. Meyers*, 529 F.2d 1033 (7th Cir. 1976). In *Meyers*, the defendants were candidates for public office who accepted money individually in consideration for their future official acts as trustees for the East Side Levee and Sanitary District. The defendants ultimately obtained public office. They were indicted for an inchoate offense, conspiracy to violate the Hobbs Act, and the district court framed the issue on appeal as "whether candidates for political office can obtain property (i.e., $6000) from another with that person's consent induced under color of official right." *Id*. at 1035. The district court concluded that "[a] mere candidate for public office can not obtain property from another with that person's consent under color of official right." *Id.*

On appeal, the Seventh Circuit disagreed with the district court's characterization of the issue. It narrowed the issue on appeal to "whether, within the meaning of the Hobbs Act, it is a crime for candidates for political office to conspire to affect commerce by extortion induced under color of official right during a time frame *beginning before the election but not ending until after the candidates have obtained public office*." *Id*. at 1035 (emphasis added). The court leaned on the "crucial factor of continuity in the crime of conspiracy," and determined that

25

the conspiracy did not conclude until after the defendants took office. *Id.* at 1036. Accordingly, the Seventh Circuit held that "the alleged conspiracy to obtain property under color of official right constitutes a crime under the Hobbs Act, even though [the defendants] were private citizens at the inception of the conspiratorial agreement." *Id.* Although the Seventh Circuit reasoned that "it is no less of a crime under the Hobbs Act to sell one's public trust before, rather than after, one is installed in public office," it rested its decision on the basis that the defendants ultimately obtained office. *Id.* at 1038.[11]

A Hobbs Act inchoate offense prohibits a person acting "under color of official right" from attempting or conspiring to

---

[11] Several other courts have drawn upon the reasoning in *Meyers*, but none has extended inchoate Hobbs Act violations to a candidate who never obtained public office. In *United States v. Forszt*, the Seventh Circuit considered a defendant who began accepting bribes while in office but received the final payments after leaving office. 655 F.2d 101 (7th Cir. 1981). It extended the period of criminality for a conspiracy charge to encompass the period after the defendant left office because he began to sell his "public trust" while still in office. *Id.* at 104. However, the reach of *Meyers* was narrowed considerably in *United States v. McClain*, 934 F.2d 822 (7th Cir. 1991). The Seventh Circuit stated: "therefore we believe that, as a general matter and with caveats as suggested here, proceeding against private citizens on an 'official right' theory is inappropriate under the literal and historical meaning of the Hobbs Act, irrespective of the actual 'control' that citizen purports to maintain over governmental activity." *Id.* at 831.

use his or her public office in exchange for payments. It does not prohibit a private person who is a candidate from attempting or conspiring to use a future public office to extort money at a future date. Conspiracy is a powerful tool that is often well-utilized by the government; however "[i]ts history exemplifies the 'tendency of a principle to expand itself to the limit of its logic.'" *Krulewitch v. United States*, 336 U.S. 440, 445 (1949) (Jackson, J., concurring) (quoting Cardozo, The Nature of the Judicial Process 51 (1921)). To sustain an "under color of official right" Hobbs Act charge here would create a "legal alchemy with the power to transform any gap in the facts into a cohesive extortion charge," as feared by the District Court. *Manzo*, 714 F. Supp. 2d at 497. No court has extended application of the Hobbs Act this far, and we decline to do so now.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court. Acting "under color of official right" is a requirement of an extortion Hobbs Act offense, substantive or inchoate, when that offense does not involve threatened force, violence or fear. Conduct by an unsuccessful candidate in an election does not meet that requirement.