NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-1736
_____

UNITED STATES OF AMERICA,

v.

EARL MOORE,
also known as JEROME MIXSON
also known as REDBONE,

Earl Moore,
                    Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-08-cr-00730-001)
District Judge:  Hon. Juan R. Sanchez

_____


Submitted Under Third Circuit LAR 34.1(a)
November 9, 2011

Before:  SCIRICA, SMITH & JORDAN, *Circuit Judges*.

(Filed: November 14, 2011)
_____


OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Earl Moore appeals the judgment of the United States District Court for the Eastern District of Pennsylvania sentencing him to 360 months' imprisonment based on his conviction for attempting to possess with intent to distribute five kilograms of cocaine, in violation of 21 U.S.C. § 841(a). For the following reasons, we will affirm.

## I.      Background

### A.      Facts

In September 2008, Earl Moore met Javier Rivas, a government informant, at a carwash at 7th and Mifflin Streets in Philadelphia, Pennsylvania. During the meeting, Rivas informed Moore that he had "some kilos [of cocaine] coming in" and asked Moore if he was interested in purchasing any. Moore told Rivas that he was interested, and the two men exchanged telephone numbers.

Thereafter, on September 19, 2008, Moore and Rivas spoke on the telephone. During that conversation, which was recorded by the police, they agreed to meet at a McDonald's restaurant on Oregon Avenue. When the men arrived at McDonald's, Moore got into Rivas's car, and Rivas informed Moore that he expected to receive a few kilograms of cocaine in one week. Moore said that, if Rivas would supply him with the cocaine, he could sell it.

On September 26, 2008, Moore called Rivas to inquire about the status of their agreement. Rivas assured Moore that he was preparing to leave town to pick up a few kilograms of cocaine, and that he planned to bring it back to Philadelphia.

2

On October 1, 2008, Rivas notified Moore that he had returned with the cocaine and instructed Moore to again meet him at the McDonald's on Oregon Avenue. When the men met at McDonald's, they discussed how Moore could earn a profit by purchasing and selling cocaine. In particular, Moore asked Rivas how much he could earn from the transaction, and Rivas told him that he could earn $1,000.00 for selling each kilogram of cocaine. Later that day, Moore called Rivas requesting three kilograms of cocaine,] and told Rivas that he needed additional time to get the money from his associates so that he could complete the transaction. Still later, Moore called and increased his request to five kilograms of cocaine. Rivas agreed to deliver five kilograms and told Moore to call him when he had received the money, so that they could complete the deal.

That evening, while Moore was at his residence, two men arrived, driving separately in a white Acura and a black Lexus. Each man took a bag from the trunk of his car and brought it into Moore's house. Moore then called Rivas to tell him that he planned to drive a white Acura to their meeting to complete the transaction they had been discussing.

Moore left his house carrying a black bag, in the Acura, and drove east on Winton Street. The two men who had been at his house followed Moore in another car. When the Acura reached Oregon Avenue, a police cruiser activated its headlights and pulled the Acura over in a Dunkin' Donuts parking lot. Philadelphia police officers exited the patrol car and approached the Acura. However, before they reached it, Moore fled the parking lot and drove southbound on Oregon Avenue at high speed. During the ensuing

3

chase, Moore crossed over to the opposite side of the street, against oncoming traffic, endangering other drivers and pedestrians.

Eventually, Moore turned north on 11th Street towards Moyamensing Avenue, where he parked the Acura. He got out of the car, took two bags from the passenger side, and began walking eastbound on Moyamensing. Soon after Moore left the Acura, however, he was arrested by police officers. When the officers searched Moore's bags, they discovered $165,074.00 in cash, and a piece of paper which contained the number "33" written five times in a column. Moore was later released from custody and called Rivas to tell him what happened. He informed Rivas that he was captured by local police officers and that he told the officers he had found two bags of cash at 2nd and Market Streets.

### B.     Guilty Verdict and Sentencing

On January 11, 2010, a jury found Moore guilty of one count of attempting to possess with the intent to distribute five or more kilograms of cocaine. The District Court held a sentencing hearing on May 26, 2010. At the sentencing hearing, Moore argued that a sentence of 360 months to life imprisonment was "draconian" because he was a "small-time drug dealer" who was lured into committing a felony drug offense by a government agent.[1] (App. 19.) The government argued that a sentence within the range prescribed by the Sentencing Guidelines was appropriate. The government emphasized that Moore acquired a substantial amount of money within a few days, drove towards the

---

[1] Notably, although Moore argued that the government lured him into taking part in a deal to sell cocaine, he does not allege entrapment as a defense to his conviction.

4

location where he intended to purchase the cocaine, and fled from police officers in a dangerous and reckless manner.

In determining Moore's sentence, the District Court adopted the guidelines calculations from a pre-sentence report ("PSR"), concluding that the maximum term of imprisonment was a life sentence and that the minimum term was twenty years. The District Court set the base offense level at 32, added two levels for Moore's prior conviction for obstruction of justice, and added three levels due to Moore's status as a career offender. The Court then examined the factors outlined in 18 U.S.C. § 3553(a). With respect to the nature and circumstances of the offense, the District Court noted that Moore agreed to purchase five kilograms of cocaine for $165,000.00, led police officers on a high-speed chase to avoid arrest, and lied to police officers about how he had obtained the $165,000.00 in cash. The District Court also examined Moore's personal characteristics, including his family background, employment history, and background of drug use and treatment. Finally, the Court examined Moore's criminal history in detail, including his prior convictions for drug-related offenses, a weapons possession offense, and resisting arrest.

Based upon the information available in the PSR, and an analysis of the § 3553(a) factors, the Court determined that a sentence within the range prescribed by the guidelines was appropriate. It sentenced Moore to 360 months' imprisonment. The Court noted that, based on the offense, Moore's criminal history, and the circumstances surrounding his arrest, a downward variance from the guidelines "[would] undermine the seriousness of the offense," and "would not promote respect for the law." (App. 43.)

5

The Court also determined that Moore's "false testimony … undermines our system of justice," and that a sentence within the guidelines' range would "assure[] the congressional goal of a fair, proportionate and uniform system of sentencing defendants, who are similarly situated." (App. 43-44.)

Moore timely appealed his conviction and sentence.

## II.     Discussion[2]

### A.     *Moore's Conviction*

Moore argues that the government failed to present sufficient evidence for the jury to find him guilty of attempting to possess with intent to distribute five kilograms of cocaine. Specifically, he asserts that the government failed to prove that he took a "substantial step" towards the commission of a crime because he did not actually transfer the $165,000.00 to Rivas. According to Moore, the only evidence the government put forth at trial was several recorded conversations between Rivas and Moore, which he says is insufficient to sustain his conviction.

"We apply a … deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998). We do not "weigh the evidence or … determine the credibility of the witnesses." *Id.* (quoting *United States v. Voight*, 89 F.3d 1050, 1080 (3d Cir.), *cert. denied*, 519 U.S. 1047 (1996) (citation omitted)). Instead, we "view the evidence in the light most favorable to the government, and will sustain a verdict if any rational trier of

---

[2] We have jurisdiction over Moore's appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.

fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal citations and quotation marks omitted). As a result, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (quoting *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125 (1982)).

We follow the Model Penal Code's ("MPC") approach for determining whether a defendant is guilty of an attempted crime. *United States v. Hsu*, 155 F.3d 189, 203 n.19 (3d Cir. 1998). Under that approach, a person is guilty of criminal attempt "'if, acting with the kind of culpability otherwise required for commission of the crime, he … purposely does or omits to do anything that, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.'" *United States v. Tykarsky*, 446 F.3d 458, 469 (3d Cir. 2006) (quoting *Hsu*, 155 F.3d at 202-03 (quoting and adopting MPC § 5.01(1)(c) (1985))). Here, Moore was convicted under 21 U.S.C. § 841(a)(1), which provides that "it shall be unlawful for any person knowingly or intentionally … to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Thus, in order to sustain a conviction for criminal attempt, the government has the burden of proving that Moore, "knowingly" or "intentionally" performed an act that constitutes a substantial step towards possessing cocaine with the intent to distribute it.

A substantial step is more than "mere preparation," but less than the "last act necessary" to commit the actual substantive offense. *United States v. Yousef*, 327 F.3d

56, 134 (2d Cir. 2003) (internal quotation marks omitted); *cf.* MPC § 5.01(2) (1985)

(noting that a defendant may take a substantial step by merely "reconnoitering the place

contemplated for the commission of the crime," or "possess[ing] materials to be

employed in the commission of the crime").  At a minimum, it requires "some

appreciable fragment of the crime in progress."  *United States v. Hadley*, 918 F.2d 848,

853 (9th Cir. 1990) (citation and internal quotation marks omitted).  Whether an

individual takes a substantial step in the commission of a criminal offense ultimately

depends "on the particular factual context of each case."  *United States v. Crowley*, 318

F.3d 401, 408 (2d Cir. 2003) (quoting *United States v. Manley*, 632 F.2d 978, 988 (2d

Cir. 1980)).

The record here contains sufficient evidence to support Moore's conviction for

attempting to possess with intent to distribute cocaine.  First, the record is replete with

evidence that Moore knowingly and intentionally agreed to purchase five kilograms of

cocaine for distribution.  On September 19, 2008, in a recorded conversation, Moore and

Rivas discussed Moore being willing and able to sell three kilograms of cocaine.[3]  One

week later, Moore called Rivas, inquiring about the status of the deal and asking how

soon the two men could consummate the transaction.  In addition, on October 1, 2008,

Moore called Rivas to request three kilograms of cocaine and then increased his request

---

[3] In a recorded conversation, Moore told Rivas:  "I mean, like, I said, if I can get the money, people like, you know, I got the things, it's a real wrap and I can show them the [cocaine], they'll buy off me, I'm dead serious."  (App. 344-45.)

8

to five kilograms.  Those conversations demonstrate Moore's criminal intent, and a reasonable jury could conclude that Moore acted accordingly.

Second, Moore undoubtedly took a "substantial step in the commission of [a] crime." *United States v. Manzo*, 636 F.3d 56, 66 (3d Cir. 2011) (citation omitted).  He called Rivas asking to purchase five kilograms of cocaine, collected $165,074.00 in cash to purchase the cocaine, and drove towards the location where he planned to consummate the drug deal.  When the police eventually captured Moore, they found him with the $165,000.00 in cash and a note with what appeared to be a drug tally sheet.  Those facts demonstrate that, on October 1, 2008, Moore was in the process of purchasing (and eventually selling) five kilograms of cocaine, before the officers apprehended him.  By obtaining the funds necessary to purchase the cocaine and driving to the site of the planned transaction, Moore was taking "substantial step[s] in the commission of [a] crime." *Tykarsky*, 446 F.3d at 469.

Moore's argument that his actions did not constitute a "substantial step" because the policemen apprehended him before he arrived at the transaction site is unavailing.  In order to prove that the defendant took a substantial step, the government need not prove that he or she performed "the last act necessary" to consummate the crime.  *Yousef*, 327 F.3d at 134 (citation omitted); *see United States v. Barnes*, 230 F.3d 311, 315 (7th Cir. 2000) ("A substantial step is something more than mere preparation, but less than the last act necessary before the actual commission of the substantive crime."); *United States v. Pratt*, 351 F.3d 131, 137 (4th Cir. 2003) (finding that defendant took "substantial step" to possess with intent to distribute illegal drugs when government offered evidence of

9

recorded conversations between defendant and co-conspirator and evidence that defendant promised to serve as a "middleman" in drug transaction). Here, the government produced evidence that Moore planned the purchase and sale of five kilograms of cocaine, and attempted to execute his plan. Although he ultimately failed to perform the "last act necessary" to achieve his criminal objective, his actions certainly moved beyond the point of mere preparation and into the realm of criminal attempt.

### B.    Moore's Sentence

We review a criminal sentence for abuse of discretion. *United States v. Grober*, 624 F.3d 592, 599 (3d Cir. 2010). In reviewing a criminal sentence, our role is typically two-fold. First, we check that the district court committed no significant procedural error in arriving at its decision. *United States v. Wise*, 515 F.3d 207, 217 (3d Cir. 2008). Second, "if we determine that the district court has committed no significant procedural error, we then review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range." *Id.* at 218 (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Although we may consider the extent of a district court's deviation from the Guidelines range, we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Gall*, 552 U.S. at 51. "If the sentence is within the Guidelines range, [we] may, but [are] not required to, apply a presumption of reasonableness." *Id.* "The fact that [we] might reasonably have concluded that a different sentence [is] appropriate is insufficient to justify reversal of the district court." *Id.*

Moore does not challenge the procedural foundation of his sentence so we will proceed directly to what he does argue, namely, that his thirty-year sentence is substantively unreasonable. Specifically, Moore asserts that, in determining the duration of his sentence, the District Court should have considered the fact that he was "a small time drug dealer," who was "encouraged by a government agent to gather money from others in an effort to lure them into purchasing a large amount of cocaine." (Appellant's Opening Br. 34-35.) In addition, Moore argues that his thirty-year sentence "is beyond any rational scheme designed to impose punishment," (*id*. at 35), and that the District Court "overrepresent[ed]" his criminal history, (*id*. at 36). We disagree.

As previously mentioned, if a sentence is within the range of punishment prescribed it may be presumed to be substantively reasonable. *Gall*, 552 U.S. at 51. Here, because of Moore's extensive criminal history (*e.g.*, his prior convictions for various drug and firearm offenses, and his conviction for resisting arrest), the circumstances surrounding his apprehension (*e.g.*, his attempt to evade arresting officers by leading them on a high-speed chase throughout the city, and his subsequent decision to mislead government agents), and the magnitude of the crime he attempted to commit (dealing in a multi-kilo quantity of cocaine), that presumption is in order.

In an attempt to rebut the presumption, Moore argues that he is a "small-time drug dealer," and claims that the District Court accorded excessive weight to his role in the offense and his criminal history. (App. 19.) However, with respect to Moore's first argument, we find persuasive the District Court's observation that "a minnow or a minor player does not raise $165,000.00 in a short period of time, if he's not deeply involved …

11

in drug trafficking." (App. 42.) As to Moore's second argument, "a district court's failure to give mitigating factors the weight a defendant contends they deserve [does not] render[] the sentence unreasonable" or indicate an abuse of discretion. *United States v. Bungar*, 478 F.3d 540, 546 (3d Cir. 2007). Ultimately, the fact that the District Court gave significant weight to Moore's criminal history and his role in the deal, and little weight to his claimed status as a "small time dealer," does not make his sentence unreasonable. The District Court did not abuse its discretion by sentencing Moore to 360 months' imprisonment.

## III.    Conclusion

For the foregoing reasons, we affirm the District Court's judgment.